# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| | ) |
| In Re | ) |
| Bacone College, | ) Case Number 24-80487 |
| Debtor | ) Chapter 7 |
| | ) |

### TRUSTEE'S MOTION TO SUBSTANTIVELY CONSOLIDATE
### BACONE COLLEGE DEVELOPMENT CORPORATION

COMES NOW Luke Homen Law, PLLC, Attorneys for Luke Homen, Trustee of the Estate of Bacone College, and states:

### FACTS

1. The Debtor filed this bankruptcy as a Chapter 11 Subchapter V Voluntary Petition on June 21, 2024.

2. The Court entered an Order on May 13, 2025 converting this case to Chapter 7.

3. On May 13, Luke Homen was appointed as Trustee of the Estate of Bacone College.

4. On information and belief, the Trustee asserts that valuable real estate interests rightfully owned by Bacone College (hereinafter "Debtor") are currently being held in a related entity, the Bacone College Development Corporation (hereinafter "BCDC").

5. On or about December 22, 1986, the Debtor transferred valuable real estate to BCDC *See attached Exhibit A*.

6. On information and belief, the Trustee asserts that Debtor was not paid any consideration for this transfer.

7. According to the original Articles of Incorporation, filed with the Secretary of State of Oklahoma in 1986, BCDC was formed as a Non-Profit entity with the purpose:

"(a) To receive and maintain a fund of funds of moneys and property, real, personal or mixed, and to use and apply the whole or any part of the income therefrom and the

principal thereof exclusively for charitable, scientific and/or educational purposes by the application thereof **to the use of and for the benefit of Bacone College.**" Emphasis added. *See attached Exhibit B.*

8.   On information and belief, the Trustee asserts that this purpose has continued to the present day.  For example, the Form 990 for the BCDC states in Part 1:

"Briefly describe the organization's mission or most significant activities: TO RECEIVE AND MAINTAIN A FUND OR FUNDS EXCLUSIVELY FOR CHARITABLE, SCIENTIFIC AND/OR EDUCATIONAL PURPOSES BY THE APPLICATION THEREOF **FOR THE BENEFIT OF BACONE COLLEGE**."  Emphasis added. *See attached Exhibit C.*

9.   A deed from 2020 shows Debtor and BCDC continuing to work in close concert and with identical controlling persons.  On March 9, 2020, The Board of Trustees of both Debtor and BCDC authorized the sale of 20.96 acres to Muskogee Public Schools.

The deed and accompanying resolutions are signed by Dr. Ferlin Clark, as President of Debtor, Dr. Ferlin Clark, Board of Director of BCDC; Quinton Roman Nose, Chairman of the Board of Trustees of Debtor,  Quinton Roman Nose, Board of Director of BCDC; and Dr. Lahoma Schultz, Secretary of Board of Trustees of Debtor, and  Dr. Lahoma Schultz, Secretary of Board of Trustees of BCDC.  *See attached Exhibit D.*

10.  The Debtor and BCDC continue to use their identities interchangeably.  As recently as May 2, 2025, just 11 days prior to the conversion of this case to Chapter 7, Dr. Leslie Hannah, as Director of BCDC, entered into a contract with the Green House Gallery, aka Green Haus Gallery, a private art gallery in Huntsville UT, to use and display art belonging to the Debtor.  *Compare Exhibit E, attached, with Debtor's Statement of Financial Affairs, #20.1 and Schedule A/B line 77, docket entry # 25.*

11. Additionally, on information and belief, the Trustee asserts that during the pendency of the Chapter 11, the BCDC engaged the services of Williams and Williams to sell parcels of land belonging to BCDC in an effort to pay the debts of the Debtor. *See attached Exhibit F, signed by Leslie Hannah, as President of BCDC.*

12. On information and belief, the Trustee asserts that Williams and Williams found purchasers for these parcels owned by BCDC for a total of over $700,000, but that Dr. Hannah breached the contract and did not complete the sale. However, instead of paying Williams and Williams the costs of the sale, BCDC instead directed them to the Trustee to seek payment!

13. As Trustee of the Estate of Bacone, Luke Homen consents to substantively consolidating BCDC into this instant bankruptcy case.


ARGUMENT

13. The Trustee now seeks an Order substantively consolidating BCDC with this case.

14. In considering substantive consolidation courts apply the following standard:

      a) There is substantial identity between the entities to be consolidated; and

      b) Consolidation is necessary to avoid some harm or to realize some benefit.

*In re Limited Gaming of Am.* 228 B.R. 275 (N.D. Okla 1998).

14. <u>With respect to substantial identity</u>:

    a)   The assets of BCDC were given to it by Debtor for no consideration;

    b)   The original purpose of BCDC is to generate funds for the use and benefit of Debtor;

    c)   The current existing purpose of BCDC is to generate funds for the use and benefit of Debtor;

    d)  When BCDC sold real estate, it acts together with Debtor to sell property in one single transaction, for one sales prices, with no attempt to disentangle their

respective interests;

e)   The controlling persons of both BCDC and Debtor have historically been the same, and continue to be the same persons;

f)   During the Ch. 11 case, the Debtor attempted to use the identity of BCDC to hide the location and/or ownership of Debtor's artwork;

g)   During the Ch. 7 case, BCDC has directed a creditor, namely Williams and Williams, to approach the Trustee of Debtor to pay BCDC's debts;

h)   It is extremely difficult if not impossible to unwind the entangled financial affairs of these entities.

15.   These factors have ben used by courts to justify substantive consolidation. See *In re AHF Development* 462 B.R. 186, 195-96 (Bankr. ND. . Tex. 2011) (citing to 1 COLLIER ON BANKRUPTCY § 105.09(2)(a) (16th  ed . 2010) ; *Union Sav. Bank v. Augie/Restivo Baking Co. Ldt (In er Augie/Restivo Baking Co. Ltd*) 860 F.2d 515, 519 (2d Cir. 1988).

16.  Benefit to the Estate: With respect to possible benefit of the estate, the Trustee believes that BCDC currently owns several parcels of real estate which may be sold to benefit the bankruptcy estate.

Debtor has systematically and intentionally used BCDC as an alter ego in order to benefit Debtor, which is the publicly disclosed stated purpose of BCDC.  BCDC's assets originally belonged to Debtor, and were deeded to BCDC to create value for Debtor. Substantive consolidation is necessary here in order to retrieve this value  for the benefit of his bankruptcy estate.

17.  With respect to harm, absent consolidation, the estate could lose the benefit of properties held by BCDC.  Also, the primary creditor of BCDC, Williams and Williams, would be forced to sue BCDC – and potentially Debtor – for the work that Dr. Hannah hired them to do for the the benefit of Debtor.

Secondly, courts have concluded that where the interelationship of the group is

hopelessly obscured and the time and expense necessary even to attempt to unscramble them is so substantial as to threaten the realization of any net assets for all creditors, equity is not helpless to reach a rough approximation of justice to some rather than deny any at all.  *See Chemical Bank N.Y. Trust Co. v. Kheel* 369 F2. 845, 847 (2d Cir. 1966). Where the creditors dealt with the entities as single unit and did not rely on their separate identity in extending credit and/or where the affairs of the Debtor entities and the entity to be consolidated are as entangled that consolidation would benefit all creditors, there is a basis for the court to substantively consolidate estates.

18.  The Trustee intends to seek an order of the Court directing the substantive consolidation of BCDC with this estate unless an interested and necessary party objects and requests a hearing on the mater within 21 days of the filing of this motion.


Respectfully submitted today, June 24, 2025.


By:  */s/ Luke Homen*
     Luke Homen
     OK Bar #32243
     Luke Homen Law, PLLC
     10313 Greenbriar Parkway
     Oklahoma City, Oklahoma 73159
     phone: (405) 639-2099
     fax: (405) 252-1654
     luke@lukehomenlaw.com
     Attorneys for the Trustee

MANLY LEGAL BLANK          FORM NO. 282-AF          Manly Office Supply Co.-Pretest-Lota, Okla

(ORDER BY NUMBER)

740787

# WARRANTY DEED

### Corporation Form

### EXHIBIT A

This Space Reserved for Filing Stamp

**Know All Men by These Presents:**

That **Bacone College, an Oklahoma corporation**

a corporation duly organized and existing under and by virtue of

the laws of the State of _____Oklahoma_____, whose

principal place of business is in _____Muskogee_____

County, State of _____Oklahoma_____, party of the first part, in consideration of the

sum of __Ten Dollars and no/100------------------__DOLLARS ($ 10.00 )

and other valuable considerations, in hand paid, the receipt of which is hereby acknowledged, does hereby Grant,

Bargain, Sell and Convey unto **Bacone College Development Corporation**

of __Muskogee__ County, State of __Oklahoma__ party

of the second part, the following described real property and premises situate in _____Muskogee_____

_____Muskogee_____ County, State of _____Oklahoma_____ to-wit:

See attached legal description.

This property shall be used only for appropriate purposes which are
legal. Also, this property will not be used for immoral purposes as
defined by the Bacone College Board of Trustees.

In the event of a violation of this provision, or in the event Bacone
College shall cease to exist, title shall revert to the Grantor, but
the right of reverter hereby retained and reserved by the Grantor
shall be subordinate to and shall not defeat or render invalid the
lien or claim of any mortgage or deed of trust hereafter affecting
said premises, provided that such mortgage or deed of trust is given
in good faith, for a valid consideration, and that the proceeds of
said mortgage or deed of trust be used to improve said premises
hereby conveyed.

together with all the improvements thereon and appurtenances thereunto belonging and warrant the title to the same.

TO HAVE AND TO HOLD said described premises unto the said party of the second part, **its** heirs
and assigns **are** forever free, clear and discharged of and from all former grants, charges, taxes, judgments,
mortgages and other liens and encumbrances of whatsoever nature.

IN WITNESS WHEREOF, the said party of the first part hereto has caused these presents to be signed in its name

by its _____ President, its corporate seal affixed, and attested by its Secretary at _____

_____ this __22nd__ day of __December__, 1986.

BACONE COLLEGE, AN OKLAHOMA CORPORATION

_____ President

Attest: _____ Secretary

### CORPORATION ACKNOWLEDGMENT
### Oklahoma Form

STATE OF OKLAHOMA
COUNTY OF __MUSKOGEE__ } SS:

Before me, the undersigned, a Notary Public, in and for said County and State on this __22nd__ day of

__December__, 1986, personally appeared __A.C. Linkel__

to me known to be the identical person who subscribed the name of the maker thereof to the foregoing instrument as its

_____ President and acknowledged to me that __he__ executed the same as his free and voluntary act and

deed and as the free and voluntary act and deed of such corporation, for the uses and purposes therein set forth.

Given under my hand and seal of office the day and year last above written.

My commission expires __March 2, 1989__ _____ Notary Public

NOT AN OFFICIAL DOCUMENT
OKMULGEE SOUTHERN.COM

BOOK 1882 PAGE 102

STATE OF OKLAHOMA
MUSKOGEE COUNTY
FILED OR RECORDED
1986 DEC 23 AM 9 13
GETTY PACE
COUNTY CLERK

TRACT NO. 1

A tract of land in Lots 2, 3 and 4 of Section 18, T15N, R19E, Muskogee County, State of Oklahoma, more particularly described as follows: Beginning at a point on Highway 16 and 62 Right-of-Way said point being 797.94 feet North and 41.25 feet East of the Southwest corner of said Section 18; thence N 1°37'14" W along said Highway 16 Right-of-Way a distance of 2,350.88 feet, thence S 82°33'02" E a distance of 970.36 feet, thence S 1°37'14" E a distance of 2,633.32 feet to a point on the Northerly Right-of-Way of U.S. Highway 62, thence N 77°25'37" W along said Right-of-Way a distance of 464.43 feet, thence N 52°58'42" W along said Right-of-Way a distance of 398.67 feet, thence N 77°25'37" W along said Right-of-Way a distance of 150.00 feet, thence N 47°25'37" W along said Right-of-Way a distance of 44.32 feet to the Point of Beginning. Containing 55.64 acres, more or less.

TRACT NO. 2

A tract of land in the SE¼ SW¼, Section 18, T15N, R19E, Muskogee County, State of Oklahoma, more particularly described as follows: Beginning at a point on the East line of the W½ E½ SE¼ SW¼ of said Section 18 112.57 feet S 1°42'36" E from the Northeast corner thereof, thence S 1°42'36" E along said East line a distance of 972.60 feet to a point on the North Right-of-Way of U.S. Highway 62 Frontage Road, thence S 88°21'39" W along said Right-of-Way a distance of 895.59 feet, thence N 6°50'33" E a distance of 341.29 feet, thence N 88°19'29" E a distance of 253.78 feet, thence N 3°27'22" E a distance of 637.40 feet, thence N 88°21'39" E a distance of 533.66 feet to the Point of Beginning. Containing 14.94 acres, more or less.

TRACT NO. 3

A tract of land in Lot 2, and the SE¼ NW¼, Section 18, T15N, R19E, Muskogee County, State of Oklahoma, more particularly described as follows: Commencing at a point on the East Right-of-Way of State Highway 16 said point being 3,967.71 feet North and 41.25 feet East of the Southwest corner of said Section 18, said point also being 41.25 feet East of the Northwest corner of said Lot 2, thence N 88°17'30" E along the North line of said Lot a distance of 958.23 feet to the Point of Beginning; thence N 88°17'30" E along the North line of said Lot 2 and the SW¼ NW¼ a distance of 1,567.23 feet to the Northeast corner of said SE¼ NW¼; thence S 1°29'51" E along the East line of said SE¼ NW¼, a distance of 559.20 feet; thence S 88°17'30" W a distance of 854.58 feet; thence N 67°12'25" W a distance of thence N 6°28'11" E a distance of 90.23 feet; thence N 83°12'23" W a distance of 39.39 feet; thence S 6°38'55" W a distance of 89.91 feet; thence N 82°08'38" W a distance of 172.99 feet; thence S 32°04'58" W a distance of 149.18 feet; thence S 54°54'54" W a distance of 165.20 feet; thence S 31°10'51" W a distance of 176.56 feet; thence N 82°48'12" W a distance of 187.11 feet; thence N 1°37'14" W a distance of 357.41 feet to the Point of Beginning. Containing 22.31 acres, more or less.

OFFICIAL

BOOK PAGE 1882 103

VIEW ADDITIONAL LAND RECORDS AT
OKCOUNTYRECORDS.COM

**EXHIBIT B**

## OFFICE OF THE SECRETARY OF STATE



NON-PROFIT
# CERTIFICATE OF INCORPORATION

*To all to Whom these Presents shall Come, Greetings:*

**WHEREAS,** *Articles of Incorporation duly signed and verified of*

BACONE COLLEGE DEVELOPMENT CORPORATION

*have been filed in the office of the Secretary of State as provided by the Laws of the State of Oklahoma.*

**NOW THEREFORE,** *I, the undersigned, Secretary of State of the State of Oklahoma by virtue of the powers vested in me by law, do hereby issue this Certificate of Incorporation.*

**IN TESTIMONY WHEREOF,** *I hereunto set my hand and cause to be affixed the Great Seal of the State of Oklahoma.*

*Filed at the City of Oklahoma City, this* 25th.

day of _____August_____ , A.D. 19 __86__

*Jeannette B. Edmondson*
*Secretary of State*

By: *[signature]*

ARTICLES OF INCORPORATION

OF

BACONE COLLEGE DEVELOPMENT CORPORATION


STATE OF OKLAHOMA    )
                     ) SS:
COUNTY OF MUSKOGEE   )

TO THE SECRETARY OF STATE OF THE STATE OF OKLAHOMA:

We, the undersigned, being persons legally competent to enter into contracts, for the purpose of forming a non-profit corporation under the laws of the State of Oklahoma (18 O.S. 1961 SECS. 541-594), do hereby adopt the following Articles of Incorporation:

ARTICLE ONE

The name of the proposed corporation is:

BACONE COLLEGE DEVELOPMENT CORPORATION

ARTICLE TWO

The address of its registered office in the State of Oklahoma is East Shawnee Avenue and Highway 16 in the City of Muskogee, Muskogee County, Oklahoma, and the name of its registered agent at such address is Alfred O. Ginkel.

ARTICLE THREE

The duration of the corporation is perpetual.

**RECEIVED**

**AUG 25 1986**

Secretary of State

ARTICLE FOUR

The purposes for which this corporation is formed are:

(a)  To receive and maintain a fund or funds of moneys and property, real, personal or mixed, and to use and apply the whole or any part of the income therefrom and the principal thereof exclusively for charitable, scientific and/or educational purposes by the application thereof to the use of and for the benefit of Bacone College.

(b)  No part of the earnings or assets of this corporation shall afford pecuniary gain, incidental or otherwise for the

1

benefit of any member, director or officer of the corporation, or any private individual (except that reasonable compensation may be paid for services actually rendered to or for this corporation affecting one or more of its purposes) and no member, director, officer of this corporation, or any private individual shall be entitled to share in the distribution of any of the corporate assets on dissolution of the corporation.

(c) Upon the dissolution of this corporation or the winding up of its affairs, the assets of this corporation shall be distributed to Bacone College, Muskogee, Oklahoma, if it would then qualify under the provisions of Section 501(c)(3) of the Internal Revenue Code of 1954 and its regulations as they now exist or as they hereafter be amended. In the event said college is not then such an organization, then upon such dissolution or winding up of its affairs the assets of this corporation shall be distributed exclusively to The American Baptist Home Mission Society or, if it shall not exist, to charitable, scientific and/or educational organizations which would then qualify under the provision of Section 501(c)(3) of the Internal Revenue Code, 1954, and its regulations as they now exist, or as they may hereafter be amended.

(d) This corporation is prohibited from engaging in or supporting, directly or indirectly, the following activities: Carrying on propaganda, or otherwise attempting to influence legislation; participation or intervention in any political campaign on behalf of any candidate for public office; or engaging in any other activities which would jeopardize the carrying on of its charitable, educational or scientific purposes.

(e) As a means of accomplishing the foregoing purposes, this corporation shall have the following powers:

1. To accept, acquire, receive, take and hold by bequest, devise, grant, gift, purchase, exchange, lease, transfer, judicial order or decree, or otherwise, for any of its objects and purposes, any property of whatever kind and character and whether real, personal, mixed or otherwise and wheresoever situated.

2. To sell, exchange, convey, mortgage, lease, transfer or otherwise dispose of any such property as the objects and purposes of the corporation may require, subject

2

to such limitations as may be prescribed by law. Land contiguous to the existing Bacone College campus may not be sold.

3. To borrow money, and from time to time, to make, accept, endorse, execute and issue bonds, debentures, promissory notes, bills of exchange, and other obligations of the corporation for property acquired or for any of the other purposes of the corporation, and to secure the payment of any such obligation by mortgage, pledge, deed, indenture, agreement or other instrument of trust, or by other lien upon, assignment of, or agreement in regard to all or any part of the property, rights, or privileges of the corporation wherever situated, whether now owned or hereafter to be acquired.

4. To invest and re-invest all or any part of its funds in such stock, common or preferred, bonds, debentures, mortgages, or in such other securities in insured deposits and property as its Board of Directors shall deem advisable, subject to the limitations and conditions contained in any bequest, devise, grant or gift.

5. To acquire fractional interests in properties directly or in partnership with other persons, corporations or association through limited or general partnerships, but in no event shall the corporation or its assets be liable for any of the obligations of such partnership, beyond the assets of the partnership unless the corporation is the general partner and the operator of such property.

6. To establish any new legal entity including, but not limited to, a profit making corporation, a non-profit corporation, a foundation, a general partnership, a limited partnership, a trust or a joint venture within any state of the United States of America or any foreign country which permits such an entity to exist.

7. To exercise any additional power which is reasonably implied by the specific and primary purposes hereinabove specified, and to do and perform everything necessary or suitable for, or appropriate to, the accomplishment of the specific and primary purpose of the corporation and to engage in any other lawful activity.

8. To carry on the business and purpose of the corporation in the State of Oklahoma, or in any other jurisdiction of the United States of America.

<u>ARTICLE FIVE</u>

This corporation shall have no stated capital or capital stock. It is organized and shall be operated exclusively for charitable, educational and/or scientific purposes, and not for financial gain.

<u>ARTICLE SIX</u>

The number of directors to be elected at the first meeting of the present members who are the incorporators is five (5). The directors, who have been elected at the meeting duly held for said

3

purpose at Muskogee, Oklahoma on the 10th day of November, 1985, are:

ALFRED O. GINKEL
East Shawnee and Highway 16
Muskogee, Oklahoma 74401

W. LEWIS WOODSON
East Shawnee and Highway 16
Muskogee, Oklahoma 74401

EDWARD R. PATTERSON
2123 E. 59th Place
Tulsa, Oklahoma 74105

DON CHANDLER
7633 East 63rd Place
Suite 400
Tulsa, Oklahoma 74133

RON WRIGHT
4503 Iola
Muskogee, Oklahoma 74401

The above directors shall hold office until their successors are elected and qualified for the term to be provided in the By-Laws. The number of the Board of Directors of this corporation shall be not less than five nor more than nine. Within such limitations the number, qualifications, manner of election and term of office of the directors shall be prescribed by the By-Laws of this corporation.

## ARTICLE SEVEN

The members of this corporation shall be the same persons who, from time to time, are acting in the capacity of the directors of the corporation and, as set forth in Article Six hereof, are called "Members of the Bacone College Development Corporation." When a person ceases to act in such capacity, he shall cease to be a member of this corporation.

The members of this corporation shall have no liability for dues or assessments. Except as noted, the authority and qualification of members of the corporation, the property, voting and other rights and privileges of members shall be governed by the provisions of the By-Laws of the corporation.

## ARTICLE EIGHT

The Articles of Incorporation of the corporation may be amended by resolution of the Board of Directors.

IN WITNESS WHEREOF, for the purpose of forming this corporation as a private non-profit corporation, under and pursuant to the provisions of the General Non-Profit Corporation Law of the State of Oklahoma, we, the undersigned, constituting

4

the incorporators of this corporation, including the persons named hereinbefore as its first members, have executed these Articles of Incorporation this 10th day of November, 1985.

_____

_____

_____

INCORPORATORS

STATE OF OKLAHOMA    )
                     ) SS:
COUNTY OF MUSKOGEE   )

    Before me, the undersigned, a Notary Public in and for said County and State on this 10th day of November, 1985, personally appeared, W. Lewis Woodson, Alfred O. Ginkel and Ron Wright, to me known to be the identical persons who executed the foregoing Articles of Incorporation, and acknowledged to me that they executed the same as their free and voluntary act and deed for the uses and purposes therein set forth.

    IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year above written.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

_12- 31 - 87_____

5

CERTIFICATE TO BE FILLED OUT BY PRESIDING OFFICER


I hereby certify that the within named Directors were duly elected at a meeting held for said purpose at Muskogee, Oklahoma on the _10th_ day of _November_, 1985.

_____
ALFRED O. GINKEL
Presiding Officer


STATE OF OKLAHOMA    )
                     ) SS:
COUNTY OF MUSKOGEE   )

Alfred O. Ginkel, of lawful age being first duly sworn, says: that he is the presiding officer above named, that he has read the foregoing certificate and knows the contents thereof, and that the facts set forth therein are true, as he verily believes.

_____
ALFRED O. GINKEL

Subscribed and sworn to before me this _10th_ day of _November_, 1985.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

_12-31-87_____

| Form **990** | | **Return of Organization Exempt From Income Tax** | OMB No 1545-0047 |
|---|---|---|---|

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)

► Do not enter social security numbers on this form as it may be made public

► Go to *www.irs.gov/Form990* for instructions and the latest information.

**2018**

**Open to Public Inspection**

Department of the Treasury
Internal Revenue Service

**EXHIBIT C**

**A** For the 2019 calendar year, or tax year beginning 08-01-2018 , and ending 07-31-2019

**B** Check if applicable
☐ Address change
☐ Name change
☐ Initial return
☐ Final return/terminated
☐ Amended return
☐ Application pending

**C** Name of organization
BACONE COLLEGE DEVELOPMENT CORPORATION
% JEROME STEELE
Doing business as

Number and street (or P O box if mail is not delivered to street address) | Room/suite
2299 OLD BACONE ROAD

City or town, state or province, country, and ZIP or foreign postal code
MUSKOGEE, OK 744031597

**D** Employer identification number
73-1288960

**E** Telephone number
(918) 781-7216

**G** Gross receipts $ 3,634,419

**F** Name and address of principal officer
DR FERLIN CLARK
2299 OLD BACONE ROAD
MUSKOGEE, OK 744031597

**H(a)** Is this a group return for subordinates? ☐ Yes ☑ No
**H(b)** Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list (see instructions)
**H(c)** Group exemption number ►

**I** Tax-exempt status ☑ 501(c)(3) ☐ 501(c) ( ) ◄ (insert no ) ☐ 4947(a)(1) or ☐ 527

**J** Website: ► WWW BACONE EDU

**K** Form of organization ☑ Corporation ☐ Trust ☐ Association ☐ Other ►

**L** Year of formation 1986 | **M** State of legal domicile OK

## Part I Summary

**1** Briefly describe the organization's mission or most significant activities
TO RECEIVE AND MAINTAIN A FUND OR FUNDS EXCLUSIVELY FOR CHARITABLE, SCIENTIFIC AND/OR EDUCATIONAL PURPOSES BY THE APPLICATION THEREOF FOR THE BENEFIT OF BACONE COLLEGE

**2** Check this box ► ☑ if the organization discontinued its operations or disposed of more than 25% of its net assets

| | | | |
|---|---|---|---|
| **3** Number of voting members of the governing body (Part VI, line 1a) . . . . . . | **3** | 11 |
| **4** Number of independent voting members of the governing body (Part VI, line 1b) . . . . | **4** | 11 |
| **5** Total number of individuals employed in calendar year 2018 (Part V, line 2a) . . . . | **5** | 0 |
| **6** Total number of volunteers (estimate if necessary) . . . . . . . . . | **6** | |
| **7a** Total unrelated business revenue from Part VIII, column (C), line 12 . . . . . . | **7a** | 0 |
| **b** Net unrelated business taxable income from Form 990-T, line 34 . . . . . . . | **7b** | |

| | Prior Year | Current Year |
|---|---|---|
| **8** Contributions and grants (Part VIII, line 1h) . . . . . . . . | 0 | 0 |
| **9** Program service revenue (Part VIII, line 2g) . . . . . . . | 0 | 0 |
| **10** Investment income (Part VIII, column (A), lines 3, 4, and 7d ) . . . . | 599 | 280,430 |
| **11** Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 369,091 | 133,996 |
| **12** Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 369,690 | 414,426 |
| **13** Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) . . . . | 0 | 0 |
| **14** Benefits paid to or for members (Part IX, column (A), line 4) . . . . . | 0 | 0 |
| **15** Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 0 | 0 |
| **16a** Professional fundraising fees (Part IX, column (A), line 11e) . . . . | 0 | 0 |
| **b** Total fundraising expenses (Part IX, column (D), line 25) ►0 | | |
| **17** Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) . . . . | 274,293 | 154,973 |
| **18** Total expenses Add lines 13–17 (must equal Part IX, column (A), line 25) | 274,293 | 154,973 |
| **19** Revenue less expenses Subtract line 18 from line 12 . . . . . . . | 95,397 | 259,453 |

| | Beginning of Current Year | End of Year |
|---|---|---|
| **20** Total assets (Part X, line 16) . . . . . . . . . . | 3,286,774 | 2,023,839 |
| **21** Total liabilities (Part X, line 26) . . . . . . . . . | 1,522,388 | 0 |
| **22** Net assets or fund balances Subtract line 21 from line 20 . . . . | 1,764,386 | 2,023,839 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge

**Sign Here**

Signature of officer ...... | Date 2020-08-31

DR FERLIN CLARK PRESIDENT
Type or print name and title

**Paid Preparer Use Only**

Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN P00047376

Firm's name ► Finley & Cook PLLC | Firm's EIN ►

Firm's address ► 1421 E 45th Street | Phone no (405) 878-7300
Shawnee, OK 74804

May the IRS discuss this return with the preparer shown above? (see instructions) . . . . . . ☑ Yes ☐ No

For Paperwork Reduction Act Notice, see the separate instructions. | Cat No 11282Y | Form **990** (2018)

| Part III | Statement of Program Service Accomplishments |
|---|---|

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . ☐

**1**  Briefly describe the organization's mission

TO RECEIVE AND MAINTAIN A FUND OR FUNDS OF MONIES AND PROPERTY, REAL, PERSONAL OR MIXED AND THE PRINCIPAL THEREOF TO BE USED EXCLUSIVELY FOR CHARITABLE, SCIENTIFIC AND/OR EDUCATIONAL PURPOSES BY THE APPLICATION THEREOF TO THE USE AND FOR THE BENEFIT OF BACONE COLLEGE

---

**2**  Did the organization undertake any significant program services during the year which were not listed on

the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☒ **No**

If "Yes," describe these new services on Schedule O

**3**  Did the organization cease conducting, or make significant changes in how it conducts, any program

services? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☒ **No**

If "Yes," describe these changes on Schedule O

**4**  Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported

**4a**  (Code                    ) (Expenses $          154,973    including grants of $                    ) (Revenue $                    )
See Additional Data

**4b**  (Code                    ) (Expenses $                    including grants of $                    ) (Revenue $                    )

**4c**  (Code                    ) (Expenses $                    including grants of $                    ) (Revenue $                    )

**4d**  Other program services (Describe in Schedule O )
(Expenses $                    including grants of $                    ) (Revenue $                    )

**4e**  **Total program service expenses ▶**          154,973

Case 24-80487   Doc 186   Filed 06/24/25   Entered 06/24/25 14:24:43   Desc Main
Document   Page 16 of 74

| Part IV | Checklist of Required Schedules |
|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* 🖾 | **1** | Yes | |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors* (see instructions)? . . . | **2** | | No |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | **3** | | No |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | **4** | | No |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* | **5** | | No |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* 🖾 | **6** | | No |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* 🖾 . . | **7** | | No |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* 🖾 . . . . . . . . . . | **8** | | No |
| 9 | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability, serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services?*If "Yes," complete Schedule D, Part IV* 🖾 . . . . . . . . . . . | **9** | | No |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi-endowments? *If "Yes," complete Schedule D, Part V* 🖾 . . . . . . | **10** | Yes | |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI* 🖾 . . . . . . . . . . | **11a** | | No |
| b | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* 🖾 . . . . . . . | **11b** | | No |
| c | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* 🖾 . . . . . . | **11c** | | No |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* 🖾 . . . . . . . . . | **11d** | | No |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* 🖾 | **11e** | | No |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* 🖾 | **11f** | Yes | |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* 🖾 . . . . . . . . . . | **12a** | | No |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* 🖾 | **12b** | Yes | |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | **13** | | No |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? . . . . | **14a** | | No |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* . . . . . . . . | **14b** | | No |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* . . . . . . . . . | **15** | | No |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* . . . . . . | **16** | | No |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I*(see instructions) . . . . . | **17** | | No |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* . . . . . . . . . . | **18** | | No |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* . . . . . . . . . . . . . | **19** | | No |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* . . . . | **20a** | | No |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | **20b** | | |
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* . . . . | **21** | | No |
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* . . . . . . . | **22** | | No |

Form **990** (2018)

| **Part IV** | **Checklist of Required Schedules** *(continued)* | | | |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* . . | **23** | | No |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K  If "No," go to line 25a* | **24a** | | No |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? . . . | **24b** | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? . . . . . . . . . . . . . . . . | **24c** | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? . . . | **24d** | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* . . . . . . . . . . . . . . . . | **25a** | | No |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* . . . | **25b** | | No |
| 26 | Did the organization report any amount on Part X, line 5, 6, or 22 for receivables from or payables to any current or former officers, directors, trustees, key employees, highest compensated employees, or disqualified persons? *If "Yes," complete Schedule L, Part II* . . . | **26** | | No |
| 27 | Did the organization provide a grant or other assistance to an officer, director, trustee, key employee, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part III* . . . | **27** | | No |
| 28 | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions) | | | |
| a | A current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* . . . | **28a** | | No |
| b | A family member of a current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* . . . | **28b** | | No |
| c | An entity of which a current or former officer, director, trustee, or key employee (or a family member thereof) was an officer, director, trustee, or direct or indirect owner? *If "Yes," complete Schedule L, Part IV* . . . | **28c** | | No |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* . . | **29** | | No |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* . . . | **30** | | No |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* . | **31** | | No |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* . . . . . . . . . | **32** | Yes | |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301 7701-2 and 301 7701-3? *If "Yes," complete Schedule R, Part I* . . . | **33** | | No |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* . . . | **34** | Yes | |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | **35a** | | No |
| b | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* . . . | **35b** | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* . . . | **36** | | |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* . . | **37** | | No |
| 38 | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O . . . | **38** | Yes | |

| **Part V** | **Statements Regarding Other IRS Filings and Tax Compliance** | | | |
|---|---|---|---|---|

Check if Schedule O contains a response or note to any line in this Part V . . . . . . . . . . . . . ☐

| | | | | Yes | No |
|---|---|---|---|---|---|
| 1a | Enter the number reported in Box 3 of Form 1096 Enter -0- if not applicable . . | **1a** | 0 | | |
| b | Enter the number of Forms W-2G included in line 1a *Enter -0-* if not applicable . | **1b** | 0 | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | | | **1c** | | |

| | | | | |
|---|---|---|---|---|
| **2a** Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return . . . . . . . . . . . . . . . . | **2a** | 0 | | |
| **b** If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **Note.**If the sum of lines 1a and 2a is greater than 250, you may be required to e-file (see instructions) | | | **2b** | |
| **3a** Did the organization have unrelated business gross income of $1,000 or more during the year? . . . | | | **3a** | No |
| **b** If "Yes," has it filed a Form 990-T for this year?*If "No" to line 3b, provide an explanation in Schedule O* . . . | | | **3b** | |
| **4a** At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? . . | | | **4a** | No |
| **b** If "Yes," enter the name of the foreign country ▶ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR) | | | | |
| **5a** Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? . . | | | **5a** | No |
| **b** Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | | **5b** | No |
| **c** If "Yes," to line 5a or 5b, did the organization file Form 8886-T? . . . . . . . . . . | | | **5c** | |
| **6a** Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? . . . . | | | **6a** | No |
| **b** If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? . . . . . . . . . . . . . . . . . . . . | | | **6b** | |
| **7** **Organizations that may receive deductible contributions under section 170(c).** | | | | |
| **a** Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? . . . . . . . . . . . . . . . . . . | | | **7a** | No |
| **b** If "Yes," did the organization notify the donor of the value of the goods or services provided? . . . . . . | | | **7b** | |
| **c** Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? . . . . . . . . . . . . . . . . . . . . . | | | **7c** | No |
| **d** If "Yes," indicate the number of Forms 8282 filed during the year . . . . | **7d** | | | |
| **e** Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | | **7e** | No |
| **f** Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? . . | | | **7f** | No |
| **g** If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? . . . . . . . . . . . . . . . . . . . . . . | | | **7g** | |
| **h** If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? . . . . . . . . . . . . . . . . . . . . . | | | **7h** | |
| **8** **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? . . . . . . . . . . . . . . . . . . . . . . | | | **8** | |
| **9a** Did the sponsoring organization make any taxable distributions under section 4966? . . . | | | **9a** | |
| **b** Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? . . . | | | **9b** | |
| **10** **Section 501(c)(7) organizations.** Enter | | | | |
| **a** Initiation fees and capital contributions included on Part VIII, line 12 . . . | **10a** | | | |
| **b** Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | **10b** | | | |
| **11** **Section 501(c)(12) organizations.** Enter | | | | |
| **a** Gross income from members or shareholders . . . . . . . . | **11a** | | | |
| **b** Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them ) . . . . . . . | **11b** | | | |
| **12a** **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | | **12a** | |
| **b** If "Yes," enter the amount of tax-exempt interest received or accrued during the year | **12b** | | | |
| **13** **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | |
| **a** Is the organization licensed to issue qualified health plans in more than one state? **Note.** See the instructions for additional information the organization must report on Schedule O | | | **13a** | |
| **b** Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans . . . . | **13b** | | | |
| **c** Enter the amount of reserves on hand . . . . . . . . . . | **13c** | | | |
| **14a** Did the organization receive any payments for indoor tanning services during the tax year? . . . | | | **14a** | No |
| **b** If "Yes," has it filed a Form 720 to report these payments?*If "No," provide an explanation in Schedule O* . . | | | **14b** | |
| **15** Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? If "Yes," see instructions and file Form 4720, Schedule N . . . . | | | **15** | No |
| **16** Is the organization an educational institution subject to the section 4968 excise tax on net investment income? If "Yes," complete Form 4720, Schedule O . . . . . . . . . . . . . . . . . . | | | **16** | No |

Form **990** (2018)

| Part VI | Governance, Management, and Disclosure *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O  See instructions* |

Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . . . . . ☐

### Section A. Governing Body and Management

|  |  |  |  | Yes | No |
|---|---|---|---|---|---|
| **1a** | Enter the number of voting members of the governing body at the end of the tax year | **1a** | 11 |  |  |
|  | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O |  |  |  |  |
| **b** | Enter the number of voting members included in line 1a, above, who are independent | **1b** | 11 |  |  |
| **2** | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee?  .  .  .  .  .  .  .  .  .  . | | | **2** | | No |
| **3** | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person?  . | | | **3** | | No |
| **4** | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed?  . | | | **4** | | No |
| **5** | Did the organization become aware during the year of a significant diversion of the organization's assets?  . | | | **5** | | No |
| **6** | Did the organization have members or stockholders?  .  .  .  .  .  .  .  .  .  .  .  .  . | | | **6** | | No |
| **7a** | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body?  .  .  .  .  .  .  .  .  .  .  .  .  . | | | **7a** | | No |
| **b** | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body?  .  .  .  .  .  .  .  .  .  .  .  . | | | **7b** | | No |
| **8** | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following | | | | | |
| **a** | The governing body?  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . | | | **8a** | Yes | |
| **b** | Each committee with authority to act on behalf of the governing body?  .  .  .  .  .  . | | | **8b** | Yes | |
| **9** | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O*  .  .  .  .  . | | | **9** | | No |

### Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code.)*

|  |  |  | Yes | No |
|---|---|---|---|---|
| **10a** | Did the organization have local chapters, branches, or affiliates?  .  .  .  .  .  .  . | **10a** | | No |
| **b** | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** | | |
| **11a** | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form?  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . | **11a** | | No |
| **b** | Describe in Schedule O the process, if any, used by the organization to review this Form 990 | | | |
| **12a** | Did the organization have a written conflict of interest policy? *If "No," go to line 13*  .  .  .  . | **12a** | Yes | |
| **b** | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts?  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . | **12b** | Yes | |
| **c** | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe in Schedule O how this was done*  .  .  .  .  .  .  .  .  .  .  .  .  .  . | **12c** | | No |
| **13** | Did the organization have a written whistleblower policy?  .  .  .  .  .  .  .  .  . | **13** | Yes | |
| **14** | Did the organization have a written document retention and destruction policy?  .  .  .  .  . | **14** | Yes | |
| **15** | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| **a** | The organization's CEO, Executive Director, or top management official  .  .  .  .  .  . | **15a** | | No |
| **b** | Other officers or key employees of the organization  .  .  .  .  .  .  .  .  .  . | **15b** | | No |
| | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions) | | | |
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year?  .  .  .  .  .  .  .  .  .  .  .  .  .  . | **16a** | | No |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements?  .  .  .  .  .  .  .  .  .  .  .  . | **16b** | | |

### Section C. Disclosure

**17** List the States with which a copy of this Form 990 is required to be filed▶

OK

**18** Section 6104 requires an organization to make its Form 1023 (or 1024-A if applicable), 990, and 990-T (501(c)(3)s only) available for public inspection  Indicate how you made these available  Check all that apply
☐ Own website   ☐ Another's website   ☒ Upon request   ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year

**20** State the name, address, and telephone number of the person who possesses the organization's books and records
▶JEROME STEELE   2299 OLD BACONE ROAD   MUSKOGEE,OK 74403159   (918) 781-3246

Laser 2-480100   CN#1280   Filed 09/25/2019 Dated 09/24/25 14.24.43   Desc Main
Document    Page 20 of 74

Form **990** (2018)

| Part VII | Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors |
|---|---|

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . . . . ☐

| Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees |
|---|

**1a** Complete this table for all persons required to be listed  Report compensation for the calendar year ending with or within the organization's tax year

● List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation  Enter -0- in columns (D), (E), and (F) if no compensation was paid

● List all of the organization's **current** key employees, if any  See instructions for definition of "key employee "

● List all of the organization's **current** five highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations

● List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations

● List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations

List persons in the following order  individual trustees or directors, institutional trustees, officers, key employees, highest compensated employees, and former such persons

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) QUINTON ROMAN NOSE ................... CHAIRMAN | 0 0 ........ 1 0 | X | | X | | | | 0 | 0 | 0 |
| (2) W RICHARD WEST JR ................... VICE CHAIRMAN | 0 0 ........ 1 0 | X | | X | | | | 0 | 0 | 0 |
| (3) LAHOMA SCHULTZ ................... SECRETARY | 0 0 ........ 1 0 | X | | X | | | | 0 | 0 | 0 |
| (4) JOE BUNCH ................... TRUSTEE | 0 0 ........ 1 0 | X | | | | | | 0 | 0 | 0 |
| (5) JOSEPH GARCIA ................... TRUSTEE | 0 0 ........ 1 0 | X | | | | | | 0 | 0 | 0 |
| (6) MATTHEW KOMALTY ................... TRUSTEE | 0 0 ........ 1 0 | X | | | | | | 0 | 0 | 0 |
| (7) DWIGHT PICKERING ................... TRUSTEE | 0 0 ........ 1 0 | X | | | | | | 0 | 0 | 0 |
| (8) JOHN SHOTTON ................... TRUSTEE | 0 0 ........ 1 0 | X | | | | | | 0 | 0 | 0 |
| (9) GEOFFREY STANDING BEAR ................... TRUSTEE | 0 0 ........ 1 0 | X | | | | | | 0 | 0 | 0 |
| (10) NEELY TSOODLE ................... TRUSTEE | 0 0 ........ 1 0 | X | | | | | | 0 | 0 | 0 |
| (11) REGGIE WASSANA ................... TRUSTEE | 0 0 ........ 1 0 | X | | | | | | 0 | 0 | 0 |
| (12) FERLIN CLARK ................... PRESIDENT | 0 0 ........ 40 0 | | | X | | | | 0 | 32,667 | 0 |
| (13) LEROY THOMPSON ................... VP OF ACADEMIC AFFAIRS | 0 0 ........ 40 0 | | | X | | | | 0 | 52,288 | 12,406 |
| (14) JEROME STEELE ................... VICE PRESIDENT OF FINANCE/CFO | 0 0 ........ 40 0 | | | X | | | | 0 | 0 | 0 |

Case 24-80487    Doc 186    Filed 06/24/25    Entered 06/24/25 14:24:43    Desc Main Document    Page 21 of 74

| Part VII | Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)* |

| (A)<br>Name and Title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **1b Sub-Total** . . . . . . . . . . ▶ | | | | | | | | | | |
| **c Total from continuation sheets to** Part VII, Section A . . . . ▶ | | | | | | | | | | |
| **d Total (add lines 1b and 1c)** . . . . . . . . ▶ | | | | | | | | 0 | 84,955 | 12,406 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶ 0

| | | | Yes | No |
|---|---|---|---|---|
| **3** | Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . | **3** | | No |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . | **4** | | No |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* . . . . . . . | **5** | | No |

### Section B. Independent Contractors

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A)<br>Name and business address | (B)<br>Description of services | (C)<br>Compensation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶ 0

Case 24-80487   Doc 186   Filed 06/24/25   Entered 06/24/25 14:24:43   Desc Main Document   Page 22 of 74

| Part VIII | Statement of Revenue |
|---|---|

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . ☐

| | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | | | | | |
| 1a Federated campaigns . . | 1a | | | | |
| b Membership dues . . | 1b | | | | |
| c Fundraising events . . | 1c | | | | |
| d Related organizations | 1d | | | | |
| e Government grants (contributions) | 1e | | | | |
| f All other contributions, gifts, grants, and similar amounts not included above | 1f | | | | |
| g Noncash contributions included in lines 1a - 1f $ | | | | | |
| h **Total.** Add lines 1a-1f . . . . . . . ▶ | | 0 | | | |
| **Program Service Revenue** | | | | | |
| 2a | Business Code | | | | |
| b | | | | | |
| c | | | | | |
| d | | | | | |
| e | | | | | |
| f All other program service revenue | | | | | |
| 9 **Total.** Add lines 2a–2f . . . . . ▶ | | 0 | | | |
| **Other Revenue** | | | | | |
| 3 Investment income (including dividends, interest, and other similar amounts) . . . . . . . . ▶ | | 423 | | | 423 |
| 4 Income from investment of tax-exempt bond proceeds ▶ | | 0 | | | |
| 5 Royalties . . . . . . . . . . . ▶ | | 0 | | | |

| 6a Gross rents | (i) Real | (ii) Personal |
|---|---|---|
| | | |
| b Less rental expenses | 133,996 | |
| c Rental income or (loss) | 133,996 | 0 |

| | (A) | (B) | (C) | (D) |
|---|---|---|---|---|
| d Net rental income or (loss) . . . . . . ▶ | 133,996 | 133,996 | | |

| 7a Gross amount from sales of assets other than inventory | (i) Securities | (ii) Other |
|---|---|---|
| | | 3,500,000 |
| b Less cost or other basis and sales expenses | | 3,219,993 |
| c Gain or (loss) | | 280,007 |

| | (A) | (B) | (C) | (D) |
|---|---|---|---|---|
| d Net gain or (loss) . . . . . . . . ▶ | 280,007 | | | 280,007 |

| 8a Gross income from fundraising events (not including $ _____ of contributions reported on line 1c). See Part IV, line 18 . . . | a | 0 |
|---|---|---|
| b Less direct expenses . . . | b | 0 |
| c Net income or (loss) from fundraising events . . ▶ | | 0 |
| 9a Gross income from gaming activities See Part IV, line 19 . . . | a | 0 |
| b Less direct expenses . . . | b | 0 |
| c Net income or (loss) from gaming activities . . ▶ | | 0 |
| 10a Gross sales of inventory, less returns and allowances . . | a | 0 |
| b Less cost of goods sold . . | b | 0 |
| c Net income or (loss) from sales of inventory . . ▶ | | 0 |

| Miscellaneous Revenue | Business Code | | | | |
|---|---|---|---|---|---|
| 11a | | | | | |
| b | | | | | |
| c | | | | | |
| d All other revenue . . . . | | | | | |
| e **Total.** Add lines 11a–11d . . . . . . ▶ | | | | | |
| 12 Total revenue. See instructions . . . . ▶ | | 414,426 | 133,996 | | 280,430 |

Form **990** (2018)

| Part IX | Statement of Functional Expenses |

Section 501(c)(3) and 501(c)(4) organizations must complete all columns  All other organizations must complete column (A)

Check if Schedule O contains a response or note to any line in this Part IX  .   .   .   .   .   .   .   .   .   .   .   .   .   ☐

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A)<br>Total expenses | (B)<br>Program service expenses | (C)<br>Management and general expenses | (D)<br>Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments  See Part IV, line 21 | 0 | | | |
| **2** Grants and other assistance to domestic individuals  See Part IV, line 22 | 0 | | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals  See Part IV, line 15 and 16 | 0 | | | |
| **4** Benefits paid to or for members | 0 | | | |
| **5** Compensation of current officers, directors, trustees, and key employees  .   .   .   . | 0 | | | |
| **6** Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B)  .   .   .   . | 0 | | | |
| **7** Other salaries and wages | 0 | | | |
| **8** Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions)  .   .   .   . | 0 | | | |
| **9** Other employee benefits  .   .   .   .   .   .   . | 0 | | | |
| **10** Payroll taxes  .   .   .   .   .   .   .   .   . | 0 | | | |
| **11** Fees for services (non-employees) | | | | |
| **a** Management  .   .   .   .   .   .   . | 0 | | | |
| **b** Legal  .   .   .   .   .   .   .   .   . | 0 | | | |
| **c** Accounting  .   .   .   .   .   .   .   . | 0 | | | |
| **d** Lobbying  .   .   .   .   .   .   .   . | 0 | | | |
| **e** Professional fundraising services  See Part IV, line 17 | 0 | | | |
| **f** Investment management fees  .   .   .   .   . | 0 | | | |
| **g** Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | 4,759 | 4,759 | | |
| **12** Advertising and promotion  .   .   .   .   . | 0 | | | |
| **13** Office expenses  .   .   .   .   .   .   . | 2,081 | 2,081 | | |
| **14** Information technology  .   .   .   .   .   . | 0 | | | |
| **15** Royalties  .   .   . | 0 | | | |
| **16** Occupancy  .   .   .   .   .   .   . | 17,417 | 17,417 | | |
| **17** Travel  .   .   .   .   .   .   . | 0 | | | |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials  . | 0 | | | |
| **19** Conferences, conventions, and meetings  .   .   .   . | 0 | | | |
| **20** Interest  .   .   .   .   .   .   .   .   . | 83,715 | 83,715 | | |
| **21** Payments to affiliates  .   .   .   .   . | 0 | | | |
| **22** Depreciation, depletion, and amortization  .   . | 19,061 | 19,061 | | |
| **23** Insurance  .   .   . | 0 | | | |
| **24** Other expenses  Itemize expenses not covered above (List miscellaneous expenses in line 24e  If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O ) | | | | |
| **a** EQUIPMENT RENT/MAINTENANCE | 27,940 | 27,940 | | |
| **b** | | | | |
| **c** | | | | |
| **d** | | | | |
| **e** All other expenses | | | | |
| **25** **Total functional expenses. Add lines 1 through 24e** | 154,973 | 154,973 | 0 | 0 |
| **26** **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation | | | | |

Check here ▶ ☐ if following SOP 98-2 (ASC 958-720)

Case 24-80487  Doc 186  Filed 06/24/25   Entered 06/24/25 14:24:43   Desc Main
Document      Page 24 of 74

| Part X | Balance Sheet |

Check if Schedule O contains a response or note to any line in this Part IX  .  .  .  .  .  .  .  .  .  .  .  ☐

| | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|
| **Assets** | **1** | Cash—non-interest-bearing  .  .  .  .  .  .  .  .  . | 26,364 | **1** | 5,514 |
| | **2** | Savings and temporary cash investments  .  .  .  .  .  .  . | 73,900 | **2** | 74,323 |
| | **3** | Pledges and grants receivable, net  .  .  .  .  . | 0 | **3** | 0 |
| | **4** | Accounts receivable, net  .  .  .  .  .  .  .  . | 13,522 | **4** | 1,944,002 |
| | **5** | Loans and other receivables from current and former officers, directors, trustees, key employees, and highest compensated employees  Complete Part II of Schedule L  .  .  .  .  .  .  .  .  . | 0 | **5** | 0 |
| | **6** | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), persons described in section 4958(c)(3)(B), and contributing employers and sponsoring organizations of section 501(c)(9) voluntary employees' beneficiary organizations (see instructions) Complete Part II of Schedule L  .  .  . | 0 | **6** | 0 |
| | **7** | Notes and loans receivable, net  .  .  .  .  .  . | 0 | **7** | 0 |
| | **8** | Inventories for sale or use  .  .  .  .  .  .  . | 0 | **8** | 0 |
| | **9** | Prepaid expenses and deferred charges  .  .  .  .  . | 0 | **9** | 0 |
| | **10a** | Land, buildings, and equipment  cost or other basis  Complete Part VI of Schedule D      **10a** | 0 | | |
| | **b** | Less  accumulated depreciation      **10b** | 0 | 3,172,988 **10c** | 0 |
| | **11** | Investments—publicly traded securities  .  .  .  . | 0 | **11** | 0 |
| | **12** | Investments—other securities  See Part IV, line 11  .  .  .  .  . | 0 | **12** | 0 |
| | **13** | Investments—program-related  See Part IV, line 11  .  . | 0 | **13** | 0 |
| | **14** | Intangible assets  .  .  .  .  .  .  .  .  . | 0 | **14** | 0 |
| | **15** | Other assets  See Part IV, line 11  .  .  .  .  . | 0 | **15** | 0 |
| | **16** | **Total assets.** Add lines 1 through 15 (must equal line 34)  .  .  . | 3,286,774 | **16** | 2,023,839 |
| **Liabilities** | **17** | Accounts payable and accrued expenses  .  .  .  .  . | 159,301 | **17** | 0 |
| | **18** | Grants payable  .  .  . | 0 | **18** | 0 |
| | **19** | Deferred revenue  .  .  .  .  .  .  .  .  . | 0 | **19** | 0 |
| | **20** | Tax-exempt bond liabilities  .  .  .  .  .  .  . | 0 | **20** | 0 |
| | **21** | Escrow or custodial account liability  Complete Part IV of Schedule D | 0 | **21** | 0 |
| | **22** | Loans and other payables to current and former officers, directors, trustees, key employees, highest compensated employees, and disqualified persons  Complete Part II of Schedule L  .  . | 0 | **22** | 0 |
| | **23** | Secured mortgages and notes payable to unrelated third parties  .  . | 1,357,818 | **23** | 0 |
| | **24** | Unsecured notes and loans payable to unrelated third parties  .  . | 0 | **24** | 0 |
| | **25** | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17 - 24) Complete Part X of Schedule D | 5,269 | **25** | 0 |
| | **26** | **Total liabilities.** Add lines 17 through 25  .  . | 1,522,388 | **26** | 0 |
| **Net Assets or Fund Balances** | | **Organizations that follow SFAS 117 (ASC 958), check here ▶** ☑ **and complete lines 27 through 29, and lines 33 and 34.** | | | |
| | **27** | Unrestricted net assets | 1,764,386 | **27** | 2,023,839 |
| | **28** | Temporarily restricted net assets  .  .  .  .  .  . | 0 | **28** | 0 |
| | **29** | Permanently restricted net assets  .  .  .  .  . | 0 | **29** | 0 |
| | | **Organizations that do not follow SFAS 117 (ASC 958), check here ▶** ☐ **and complete lines 30 through 34.** | | | |
| | **30** | Capital stock or trust principal, or current funds  .  .  .  .  . | | **30** | |
| | **31** | Paid-in or capital surplus, or land, building or equipment fund  .  . | | **31** | |
| | **32** | Retained earnings, endowment, accumulated income, or other funds | | **32** | |
| | **33** | Total net assets or fund balances  .  .  .  .  .  . | 1,764,386 | **33** | 2,023,839 |
| | **34** | Total liabilities and net assets/fund balances  .  .  .  .  . | 3,286,774 | **34** | 2,023,839 |

Case 24-80487    Doc 186    Filed 06/24/25    Entered 06/24/25 14:24:43    Desc Main
Document        Page 25 of 74

| Part XI | Reconcilliation of Net Assets |
|---------|-------------------------------|

Check if Schedule O contains a response or note to any line in this Part XI . . . . . . . . . . . ☐

| | | | |
|---|---|---|---:|
| **1** | Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . . . . | **1** | 414,426 |
| **2** | Total expenses (must equal Part IX, column (A), line 25) . . . . . . . . . . | **2** | 154,973 |
| **3** | Revenue less expenses Subtract line 2 from line 1 . . . . . . . . . . . | **3** | 259,453 |
| **4** | Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A)) . . | **4** | 1,764,386 |
| **5** | Net unrealized gains (losses) on investments . . . . . . . . . . . . | **5** | |
| **6** | Donated services and use of facilities . . . . . . . . . . . . . | **6** | |
| **7** | Investment expenses . . . . . . . . . . . . . . . . . . | **7** | |
| **8** | Prior period adjustments . . . . . . . . . . . . . . . . . | **8** | |
| **9** | Other changes in net assets or fund balances (explain in Schedule O) . . . . . . . | **9** | |
| **10** | Net assets or fund balances at end of year Combine lines 3 through 9 (must equal Part X, line 33, column (B)) | **10** | 2,023,839 |

| Part XII | Financial Statements and Reporting |
|----------|-------------------------------------|

Check if Schedule O contains a response or note to any line in this Part XII . . . . . . . . . . . ☑

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Accounting method used to prepare the Form 990  ☐ Cash  ☑ Accrual  ☐ Other _____ | | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O | | | |
| **2a** | Were the organization's financial statements compiled or reviewed by an independent accountant? | **2a** | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both | | | |
| | ☐ Separate basis  ☐ Consolidated basis  ☐ Both consolidated and separate basis | | | |
| **b** | Were the organization's financial statements audited by an independent accountant? | **2b** | Yes | |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both | | | |
| | ☐ Separate basis  ☑ Consolidated basis  ☐ Both consolidated and separate basis | | | |
| **c** | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | **2c** | Yes | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O | | | |
| **3a** | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | **3a** | | No |
| **b** | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits | **3b** | | |

Form **990** (2018)

**Additional Data**

**Software ID:**

**Software Version:**

**EIN:** 73-1288960

**Name:** BACONE COLLEGE DEVELOPMENT CORPORATION

Form 990 (2018)

**Form 990, Part III, Line 4a:**

ENTITY HOLDS TITLE TO PROPERTY WITH ALL INCOME GOING TO BACONE COLLEGE FOR ITS EXEMPT PURPOSES

# SCHEDULE A
**(Form 990 or 990EZ)**

## Public Charity Status and Public Support

Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.
▶ **Attach to Form 990 or Form 990-EZ.**
▶ **Go to** _www.irs.gov/Form990_ **for the latest information.**

OMB No 1545-0047

# 2018

**Open to Public Inspection**

Department of the Treasury
Internal Revenue Service

**Name of the organization**
BACONE COLLEGE DEVELOPMENT CORPORATION

**Employer identification number**
73-1288960

## Part I — Reason for Public Charity Status (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is  (For lines 1 through 12, check only one box )

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990 or 990-EZ) )

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state _____

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170 (b)(1)(A)(iv).** (Complete Part II )

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II )

8 ☐ A community trust described in **section 170(b)(1)(A)(vi)** (Complete Part II )

9 ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture  See instructions  Enter the name, city, and state of the college or university _____

10 ☐ An organization that normally receives  (1) more than 331/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 331/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975  See **section 509(a)(2).** (Complete Part III )

11 ☐ An organization organized and operated exclusively to test for public safety  See **section 509(a)(4).**

12 ☑ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box in lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g

a ☑ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization  **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s)  **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions)  **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated  The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions)  **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization

f Enter the number of supported organizations ..................................................... | 1

g Provide the following information about the supported organization(s)

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1- 10 above (see instructions)) | (iv) Is the organization listed in your governing document? | | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | **Yes** | **No** | | |
| (A) BACONE COLLEGE | 730590036 | 2 | Yes | | 0 | 0 |
| **Total** | 1 | | | | 0 | 0 |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.     Cat No 11285F     **Schedule A (Form 990 or 990-EZ) 2018**

**Part II** | **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv), 170(b)(1)(A)(vi), and 170 (b)(1)(A)(ix)**

(Complete only if you checked the box on line 5, 7, 8, or 9 of Part I or if the organization failed to qualify under Part III. If the organization fails to qualify under the tests listed below, please complete Part III.)

### Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | **(a)** 2014 | **(b)** 2015 | **(c)** 2016 | **(d)** 2017 | **(e)** 2018 | **(f)** Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received (Do not include any "unusual grant ") | | | | | | |
| 2 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| 3 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 4 **Total.** Add lines 1 through 3 | | | | | | |
| 5 The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | |
| 6 **Public support.** Subtract line 5 from line 4 | | | | | | |

### Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | **(a)**2014 | **(b)**2015 | **(c)**2016 | **(d)**2017 | **(e)**2018 | **(f)**Total |
|---|---|---|---|---|---|---|
| 7 Amounts from line 4 | | | | | | |
| 8 Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | | | | | | |
| 9 Net income from unrelated business activities, whether or not the business is regularly carried on | | | | | | |
| 10 Other income Do not include gain or loss from the sale of capital assets (Explain in Part VI ) | | | | | | |
| 11 **Total support.** Add lines 7 through 10 | | | | | | |

| | | |
|---|---|---|
| 12 Gross receipts from related activities, etc (see instructions) | **12** | |

13 **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

### Section C. Computation of Public Support Percentage

| | | |
|---|---|---|
| 14 Public support percentage for 2018 (line 6, column (f) divided by line 11, column (f)) | **14** | |
| 15 Public support percentage for 2017 Schedule A, Part II, line 14 | **15** | |

16a **33 1/3% support test—2018.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization             ▶ ☐

b **33 1/3% support test—2017.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization         ▶ ☐

17a **10%-facts-and-circumstances test—2018.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test The organization qualifies as a publicly supported organization         ▶ ☐

b **10%-facts-and-circumstances test—2017.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test The organization qualifies as a publicly supported organization         ▶ ☐

18 **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions         ▶ ☐

**Part III**   **Support Schedule for Organizations Described in Section 509(a)(2)**
(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

## Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2014 | (b) 2015 | (c) 2016 | (d) 2017 | (e) 2018 | (f) Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received (Do not include any "unusual grants ") | | | | | | |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **6** **Total.** Add lines 1 through 5 | | | | | | |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year | | | | | | |
| **c** Add lines 7a and 7b | | | | | | |
| **8** **Public support.** (Subtract line 7c from line 6 ) | | | | | | |

## Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2014 | (b) 2015 | (c) 2016 | (d) 2017 | (e) 2018 | (f) Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6 | | | | | | |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975 | | | | | | |
| **c** Add lines 10a and 10b | | | | | | |
| **11** Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on | | | | | | |
| **12** Other income Do not include gain or loss from the sale of capital assets (Explain in Part VI ) | | | | | | |
| **13** **Total support.** (Add lines 9, 10c, 11, and 12 ) | | | | | | |

**14**   **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here**        ▶ ☐

## Section C. Computation of Public Support Percentage

| | | |
|---|---|---|
| **15** Public support percentage for 2018 (line 8, column (f) divided by line 13, column (f)) | **15** | |
| **16** Public support percentage from 2017 Schedule A, Part III, line 15 | **16** | |

## Section D. Computation of Investment Income Percentage

| | | |
|---|---|---|
| **17** Investment income percentage for **2018** (line 10c, column (f) divided by line 13, column (f)) | **17** | |
| **18** Investment income percentage from **2017** Schedule A, Part III, line 17 | **18** | |

**19a** **331/3% support tests—2018.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization    ▶ ☐

**b** **33 1/3% support tests—2017.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization    ▶ ☐

**20**   **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions    ▶ ☐

Case 24-80487     Doc 186     Filed 06/24/25     Entered 06/24/25 14:24:43     Desc Main Document     Page 30 of 74

**Part IV**　**Supporting Organizations**

(Complete only if you checked a box on line 12 of Part I  If you checked 12a of Part I, complete Sections A and B  If you checked 12b of Part I, complete Sections A and C  If you checked 12c of Part I, complete Sections A, D, and E  If you checked 12d of Part I, complete Sections A and D, and complete Part V )

**Section A. All Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in **Part VI** how the supported organizations are designated  If designated by class or purpose, describe the designation  If historic and continuing relationship, explain* | | |
| | **1** | Yes | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509 (a)(1) or (2)? *If "Yes," explain in **Part VI** how the organization determined that the supported organization was described in section 509(a)(1) or (2)* | | |
| | **2** | | No |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer (b) and (c) below* | | |
| | **3a** | | No |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in **Part VI** when and how the organization made the determination* | | |
| | **3b** | | |
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in **Part VI** what controls the organization put in place to ensure such use* | | |
| | **3c** | | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked 12a or 12b in Part I, answer (b) and (c) below* | | |
| | **4a** | | No |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in **Part VI** how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations* | | |
| | **4b** | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in **Part VI** what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes* | | |
| | **4c** | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer (b) and (c) below (if applicable)  Also, provide detail in **Part VI**, including (i) the names and EIN numbers of the supported organizations added, substituted, or removed, (ii) the reasons for each such action, (iii) the authority under the organization's organizing document authorizing such action, and (iv) how the action was accomplished (such as by amendment to the organizing document)* | | |
| | **5a** | | No |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | | |
| | **5b** | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | | |
| | **5c** | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in **Part VI**.* | | |
| | **6** | | No |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ)* | | |
| | **7** | | No |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described in line 7? *If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ)* | | |
| | **8** | | No |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in **Part VI**.* | | |
| | **9a** | | No |
| **b** | Did one or more disqualified persons (as defined in line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in **Part VI**.* | | |
| | **9b** | | No |
| **c** | Did a disqualified person (as defined in line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in **Part VI**.* | | |
| | **9c** | | No |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below* | | |
| | **10a** | | No |
| **b** | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings)* | | |
| | **10b** | | |

Case 24-80487　　Doc 186　　Filed 06/24/25　　Entered 06/24/25 14:24:43　　Desc Main
Document　　　Page 31 of 74

| **Part IV** | **Supporting Organizations** (continued) | | | |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described in (b) and (c) below, the governing body of a supported organization? | **11a** | | No |
| **b** | A family member of a person described in (a) above? | **11b** | | No |
| **c** | A 35% controlled entity of a person described in (a) or (b) above? *If "Yes" to a, b, or c, provide detail in Part VI* | **11c** | | No |

### Section B. Type I Supporting Organizations

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in Part VI how the supported organization(s) effectively operated, supervised, or controlled the organization's activities  If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year* | **1** | Yes | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in Part VI how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization* | **2** | | No |

### Section C. Type II Supporting Organizations

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in Part VI how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s)* | **1** | | |

### Section D. All Type III Supporting Organizations

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously described? | **1** | | |
| **2** | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization (s) or (ii) serving on the governing body of a supported organization? *If "No," explain in Part VI how the organization maintained a close and continuous working relationship with the supported organization(s)* | **2** | | |
| **3** | By reason of the relationship described in (2), did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in Part VI the role the organization's supported organizations played in this regard* | **3** | | |

### Section E. Type III Functionally-Integrated Supporting Organizations

| **1** | Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)** |
|---|---|
| **a** | ☐ The organization satisfied the Activities Test  Complete **line 2** below |
| **b** | ☐ The organization is the parent of each of its supported organizations  Complete **line 3** below |
| **c** | ☐ The organization supported a governmental entity  Describe in **Part VI** how you supported a government entity (see instructions) |

| | | | Yes | No |
|---|---|---|---|---|
| **2** | Activities Test  **Answer (a) and (b) below.** | | | |
| **a** | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in Part VI identify those supported organizations and explain how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities* | **2a** | | |
| **b** | Did the activities described in (a) constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in Part VI the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement* | **2b** | | |
| **3** | Parent of Supported Organizations  **Answer (a) and (b) below.** | | | |
| **a** | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations? *Provide details in Part VI.* | **3a** | | |
| **b** | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in Part VI. the role played by the organization in this regard* | **3b** | | |

**Part V**    **Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations**

1  ☐  Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov 20, 1970 (explain in Part VI) **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E

| | Section A - Adjusted Net Income | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Net short-term capital gain | 1 | | |
| 2 | Recoveries of prior-year distributions | 2 | | |
| 3 | Other gross income (see instructions) | 3 | | |
| 4 | Add lines 1 through 3 | 4 | | |
| 5 | Depreciation and depletion | 5 | | |
| 6 | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| 7 | Other expenses (see instructions) | 7 | | |
| 8 | **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | 8 | | |
| | **Section B - Minimum Asset Amount** | | (A) Prior Year | (B) Current Year (optional) |
| 1 | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year) | 1 | | |
| a | Average monthly value of securities | 1a | | |
| b | Average monthly cash balances | 1b | | |
| c | Fair market value of other non-exempt-use assets | 1c | | |
| d | **Total** (add lines 1a, 1b, and 1c) | 1d | | |
| e | **Discount** claimed for blockage or other factors (explain in detail in Part VI) | | | |
| 2 | Acquisition indebtedness applicable to non-exempt use assets | 2 | | |
| 3 | Subtract line 2 from line 1d | 3 | | |
| 4 | Cash deemed held for exempt use Enter 1-1/2% of line 3 (for greater amount, see instructions) | 4 | | |
| 5 | Net value of non-exempt-use assets (subtract line 4 from line 3) | 5 | | |
| 6 | Multiply line 5 by 035 | 6 | | |
| 7 | Recoveries of prior-year distributions | 7 | | |
| 8 | **Minimum Asset Amount** (add line 7 to line 6) | 8 | | |
| | **Section C - Distributable Amount** | | | Current Year |
| 1 | Adjusted net income for prior year (from Section A, line 8, Column A) | 1 | | |
| 2 | Enter 85% of line 1 | 2 | | |
| 3 | Minimum asset amount for prior year (from Section B, line 8, Column A) | 3 | | |
| 4 | Enter greater of line 2 or line 3 | 4 | | |
| 5 | Income tax imposed in prior year | 5 | | |
| 6 | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | 6 | | |

7  ☐  Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions)

Case 24-80487    Doc 186    Filed 06/24/25    Entered 06/24/25 14:24:43    Desc Main Document    Page 33 of 74

| **Part V** | Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations (continued) | |
|---|---|---|

| Section D - Distributions | | Current Year |
|---|---|---|
| 1 | Amounts paid to supported organizations to accomplish exempt purposes | |
| 2 | Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | |
| 3 | Administrative expenses paid to accomplish exempt purposes of supported organizations | |
| 4 | Amounts paid to acquire exempt-use assets | |
| 5 | Qualified set-aside amounts (prior IRS approval required) | |
| 6 | Other distributions (describe in **Part VI**) See instructions | |
| 7 | **Total annual distributions.** Add lines 1 through 6 | |
| 8 | Distributions to attentive supported organizations to which the organization is responsive (provide details in **Part VI**) See instructions | |
| 9 | Distributable amount for 2018 from Section C, line 6 | |
| 10 | Line 8 amount divided by Line 9 amount | |

| Section E - Distribution Allocations (see instructions) | (i) Excess Distributions | (ii) Underdistributions Pre-2018 | (iii) Distributable Amount for 2018 |
|---|---|---|---|
| 1 Distributable amount for 2018 from Section C, line 6 | | | |
| 2 Underdistributions, if any, for years prior to 2018 (reasonable cause required-- explain in Part VI) See instructions | | | |
| 3 Excess distributions carryover, if any, to 2018 | | | |
| a From 2013. . . . . . . . | | | |
| b From 2014. . . . . . . | | | |
| c From 2015. . . . . . . . | | | |
| d From 2016. . . . . . . . | | | |
| e From 2017. . . . . . . . | | | |
| f **Total** of lines 3a through e | | | |
| g Applied to underdistributions of prior years | | | |
| h Applied to 2018 distributable amount | | | |
| i Carryover from 2013 not applied (see instructions) | | | |
| j Remainder Subtract lines 3g, 3h, and 3i from 3f | | | |
| 4 Distributions for 2018 from Section D, line 7 $ | | | |
| a Applied to underdistributions of prior years | | | |
| b Applied to 2018 distributable amount | | | |
| c Remainder Subtract lines 4a and 4b from 4 | | | |
| 5 Remaining underdistributions for years prior to 2018, if any Subtract lines 3g and 4a from line 2 If the amount is greater than zero, explain in Part VI See instructions | | | |
| 6 Remaining underdistributions for 2018 Subtract lines 3h and 4b from line 1 If the amount is greater than zero, explain in Part VI See instructions | | | |
| 7 **Excess distributions carryover to 2019.** Add lines 3j and 4c | | | |
| 8 Breakdown of line 7 | | | |
| a Excess from 2014. . . . . . | | | |
| b Excess from 2015. . . . . | | | |
| c Excess from 2016. . . . . | | | |
| d Excess from 2017. . . . . | | | |
| e Excess from 2018. . . . . | | | |

Case 24-80487　　Doc 186　　Filed 06/24/25　　Entered 06/24/25 14:24:43　　Desc Main
Document　　　Page 34 of 74

**Additional Data**

**Software ID:**
**Software Version:**
**EIN:** 73-1288960
**Name:** BACONE COLLEGE DEVELOPMENT CORPORATION

| **Part VI** | **Supplemental Information.** Provide the explanations required by Part II, line 10, Part II, line 17a or 17b, Part III, line 12, Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c, Part IV, Section B, lines 1 and 2, Part IV, Section C, line 1, Part IV, Section D, lines 2 and 3, Part IV, Section E, lines 1c, 2a, 2b, 3a and 3b, Part V, line 1, Part V, Section B, line 1e, Part V Section D, lines 5, 6, and 8, and Part V, Section E, lines 2, 5, and 6  Also complete this part for any additional information  (See instructions) |
|---|---|

| **Facts And Circumstances Test** |
|---|
| |

**SCHEDULE D**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Supplemental Financial Statements

► Complete if the organization answered "Yes," on Form 990,
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
► Attach to Form 990.
► Go to *www.irs.gov/Form990* for the latest information.

OMB No 1545-0047

# 2018

**Open to Public Inspection**

**Name of the organization**
BACONE COLLEGE DEVELOPMENT CORPORATION

**Employer identification number**
73-1288960

## Part I — Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.
Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | **(a)** Donor advised funds | **(b)** Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? ☐ Yes ☐ No

## Part II — Conservation Easements. Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply)
☐ Preservation of land for public use (e g , recreation or education) ☐ Preservation of an historically important land area
☐ Protection of natural habitat ☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year

| | | **Held at the End of the Year** |
|---|---|---|
| a | Total number of conservation easements | 2a |
| b | Total acreage restricted by conservation easements | 2b |
| c | Number of conservation easements on a certified historic structure included in (a) | 2c |
| d | Number of conservation easements included in (c) acquired after 7/25/06, and not on a historic structure listed in the National Register | 2d |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ► _____

4 Number of states where property subject to conservation easement is located ► _____

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year
► _____

7 Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year
► $ _____

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements

## Part III — Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.
Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a If the organization elected, as permitted under SFAS 116 (ASC 958), not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items

b If the organization elected, as permitted under SFAS 116 (ASC 958), to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items

**(i)** Revenue included on Form 990, Part VIII, line 1 ► $ _____

**(ii)** Assets included in Form 990, Part X ► $ _____

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under SFAS 116 (ASC 958) relating to these items

a Revenue included on Form 990, Part VIII, line 1 ► $ _____

b Assets included in Form 990, Part X ► $ _____

For Paperwork Reduction Act Notice, see the Instructions for Form 990. Cat No 52283D **Schedule D (Form 990) 2018**

| Part III | Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets *(continued)* |
|---|---|

**3** Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply)

**a** ☐ Public exhibition    **d** ☐ Loan or exchange programs

**b** ☐ Scholarly research    **e** ☐ Other

**c** ☐ Preservation for future generations

**4** Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII

**5** During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection?    ☐ Yes   ☐ No

| Part IV | Escrow and Custodial Arrangements. |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

**1a** Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X?    ☐ Yes   ☐ No

**b** If "Yes," explain the arrangement in Part XIII and complete the following table

| | | Amount |
|---|---|---|
| **c** Beginning balance | 1c | |
| **d** Additions during the year | 1d | |
| **e** Distributions during the year | 1e | |
| **f** Ending balance | 1f | |

**2a** Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . . ☐ Yes   ☐ No

**b** If "Yes," explain the arrangement in Part XIII Check here if the explanation has been provided in Part XIII . . . . ☐

| Part V | Endowment Funds. Complete if the organization answered "Yes" on Form 990, Part IV, line 10. |
|---|---|

| | (a)Current year | (b)Prior year | (c)Two years back | (d)Three years back | (e)Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance . . . . | 5,802,334 | 5,896,989 | 5,915,629 | 5,882,143 | 5,973,479 |
| **b** Contributions . . . . | 4,611 | 4,989 | 11,004 | 11,574 | 8,308 |
| **c** Net investment earnings, gains, and losses | 2,591 | 746,638 | 532,901 | 930,100 | 1,459,061 |
| **d** Grants or scholarships . . . | | | | | |
| **e** Other expenditures for facilities and programs . . . . | 0 | 846,282 | 562,545 | 908,188 | 1,558,705 |
| **f** Administrative expenses . . . | | | | | |
| **g** End of year balance . . . . | 5,809,536 | 5,802,334 | 5,896,989 | 5,915,629 | 5,882,143 |

**2** Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as

**a** Board designated or quasi-endowment ▶

**b** Permanent endowment ▶    100 000 %

**c** Temporarily restricted endowment ▶

The percentages on lines 2a, 2b, and 2c should equal 100%

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the organization by

| | | Yes | No |
|---|---|---|---|
| **(i)** unrelated organizations . . . . . . . . . . . | 3a(i) | | No |
| **(ii)** related organizations . . . . . . . . . | 3a(ii) | Yes | |
| **b** If "Yes" on 3a(ii), are the related organizations listed as required on Schedule R? . . . . | 3b | Yes | |

**4** Describe in Part XIII the intended uses of the organization's endowment funds

| Part VI | Land, Buildings, and Equipment. |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | (a) Cost or other basis (investment) | (b) Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
|---|---|---|---|---|
| **1a** Land . . . . . | | | | |
| **b** Buildings . . . . . | | | | |
| **c** Leasehold improvements | | | | |
| **d** Equipment . . . . . | | | | |
| **e** Other . . . . . | | | | |

**Total.** Add lines 1a through 1e *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* . . . ▶

| **Part VII** | Investments—Other Securities. | Complete if the organization answered "Yes" on Form 990, Part IV, line 11b. |
|---|---|---|

See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation Cost or end-of-year market value |
|---|---|---|
| **(1)** Financial derivatives | | |
| **(2)** Closely-held equity interests | | |
| **(3)** Other | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col (B) line 12 )* ▶ | | |

| **Part VIII** | Investments—Program Related. |
|---|---|

Complete if the organization answered 'Yes' on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation Cost or end-of-year market value |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col (B) line 13 )* ▶ | | |

| **Part IX** | Other Assets. Complete if the organization answered 'Yes' on Form 990, Part IV, line 11d  See Form 990, Part X, line 15 |
|---|---|

| (a) Description | (b) Book value |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| **Total.** *(Column (b) must equal Form 990, Part X, col (B) line 15 )*   .   .   .   .   .   .   .   .   .   .   ▶ | |

| **Part X** | Other Liabilities. Complete if the organization answered 'Yes' on Form 990, Part IV, line 11e or 11f. |
|---|---|

See Form 990, Part X, line 25.

| **1.** (a) Description of liability | (b) Book value | |
|---|---|---|
| (1) Federal income taxes | 0 | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col (B) line 25 )* ▶ | 0 | |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740)  Check here if the text of the footnote has been provided in Part XIII ☑

Schedule D (Form 990) 2018

**Part XI**   **Reconciliation of Revenue per Audited Financial Statements With Revenue per Return**
      Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | |
|---|---|---|---|
| **1** | Total revenue, gains, and other support per audited financial statements . . . . . . . | **1** | |
| **2** | Amounts included on line 1 but not on Form 990, Part VIII, line 12 | | |
| **a** | Net unrealized gains (losses) on investments . . . . | **2a** | |
| **b** | Donated services and use of facilities . . . . . . . | **2b** | |
| **c** | Recoveries of prior year grants . . . . . . . . | **2c** | |
| **d** | Other (Describe in Part XIII ) . . . . . . . . | **2d** | |
| **e** | Add lines **2a** through **2d** . . . . . . . . . . . . | | **2e** | |
| **3** | Subtract line **2e** from line **1** . . . . . . . . . | | **3** | |
| **4** | Amounts included on Form 990, Part VIII, line 12, but not on line **1** | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b . | **4a** | |
| **b** | Other (Describe in Part XIII ) . . . . . . . . | **4b** | |
| **c** | Add lines **4a** and **4b** . . . . . . . . . . . | | **4c** | |
| **5** | Total revenue  Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12 ) . . . | **5** | |

**Part XII**   **Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.**
      Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | |
|---|---|---|---|
| **1** | Total expenses and losses per audited financial statements . . . . . . . . | **1** | |
| **2** | Amounts included on line 1 but not on Form 990, Part IX, line 25 | | |
| **a** | Donated services and use of facilities . . . . . . . | **2a** | |
| **b** | Prior year adjustments . . . . . . . . . . | **2b** | |
| **c** | Other losses . . . . . . . . . . . . . | **2c** | |
| **d** | Other (Describe in Part XIII ) . . . . . . . . | **2d** | |
| **e** | Add lines **2a** through **2d** . . . . . . . . . . | | **2e** | |
| **3** | Subtract line **2e** from line **1** . . . . . . . . | | **3** | |
| **4** | Amounts included on Form 990, Part IX, line 25, but not on line **1:** | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b . . | **4a** | |
| **b** | Other (Describe in Part XIII ) . . . . . . . . | **4b** | |
| **c** | Add lines **4a** and **4b** . . . . . . . . . . . | | **4c** | |
| **5** | Total expenses  Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18 ) . . . . . . | **5** | |

**Part XIII**   **Supplemental Information**

Provide the descriptions required for Part II, lines 3, 5, and 9, Part III, lines 1a and 4, Part IV, lines 1b and 2b, Part V, line 4, Part X, line 2, Part XI, lines 2d and 4b, and Part XII, lines 2d and 4b  Also complete this part to provide any additional information

| Return Reference | Explanation |
|---|---|
| See Additional Data Table | |
| | |
| | |
| | |
| | |
| | |

**Part XIII**    **Supplemental Information** *(continued)*

| Return Reference | Explanation |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**Schedule D (Form 990) 2018**

# Additional Data

**Software ID:**
**Software Version:**
**EIN:** 73-1288960
**Name:** BACONE COLLEGE DEVELOPMENT CORPORATION

**Supplemental Information**

| Return Reference | Explanation |
|---|---|
| SCHEDULE D, PART X, LINE 1 | THE COLLEGE EVALUATES AND ACCOUNTS FOR ITS UNCERTAIN TAX POSITIONS IN ACCORDANCE WITH ACCOUNTING STANDARDS CODIFICATION (ASC) TOPIC 740, "INCOME TAXES," INCLUDING THE COLLEGE'S TAX POSITION AS A NON-PROFIT ORGANIZATION  THROUGH ITS EVALUATION OF THE COLLEGE'S UNCERTAIN TAX POSITIONS, MANAGEMENT HAS DETERMINED THAT NO UNCERTAIN TAX POSITIONS EXISTED AS OF JULY 31, 2019 OR 2018, WHICH WOULD REQUIRE THE COLLEGE TO RECORD A LIABILITY FOR THE UNCERTAIN TAX POSITIONS IN ITS CONSOLIDATED FINANCIAL STATEMENTS |

**SCHEDULE N**
**(Form 990 or 990-EZ)**

OMB No 1545-0047

# 2018

**Liquidation, Termination, Dissolution, or Significant Disposition of Assets**

▶ Complete if the organization answered "Yes" on Form 990, Part IV, lines 31 or 32; or Form 990-EZ, line 36.

**Note:** To capture the full content of this document, please select landscape mode (11" x 8.5") when printing.

▶ Attach certified copies of any articles of dissolution, resolutions, or plans.

Department of the Treasury
Internal Revenue Service

▶ Attach to Form 990 or 990-EZ.
▶ Go to _www.irs.gov/Form990_ for the latest information.

**Open to Public Inspection**

Name of the organization
BACONE COLLEGE DEVELOPMENT CORPORATION

Employer identification number
73-1288960

## Part I  Liquidation, Termination, or Dissolution. Complete this part if the organization answered "Yes" on Form 990, Part IV, line 31, or Form 990-EZ, line 36.

Part I can be duplicated if additional space is needed.

| (a) Description of asset(s) distributed or transaction expenses paid | (b) Date of distribution | (c) Fair market value of asset(s) distributed or amount of transaction expenses | (d) Method of determining FMV for asset(s) distributed or transaction expenses | (e) EIN of recipient | (f) Name and address of recipient | (g) IRC section of recipient(s) (if tax-exempt) or type of entity |
|---|---|---|---|---|---|---|

| | | | | Yes | No |
|---|---|---|---|---|---|
| **1** Did or will any officer, director, trustee, or key employee of the organization | | | | | |
| **a** Become a director or trustee of a successor or transferee organization? . . . . . . . . . . . | **2a** | | |
| **b** Become an employee of, or independent contractor for, a successor or transferee organization? . . . . | **2b** | | |
| **c** Become a direct or indirect owner of a successor or transferee organization? . . . . . . | **2c** | | |
| **d** Receive, or become entitled to, compensation or other similar payments as a result of the organization's liquidation, termination, or dissolution? . . | **2d** | | |
| **e** If the organization answered "Yes" to any of the questions on lines 2a through 2d, provide the name of the person involved and explain in Part III ▶ | | | |

**2** Did or will any officer, director, trustee, or key employee of the organization

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or Form 990-EZ.    Cat. No. 50087Z    Schedule N (Form 990 or 990-EZ) (2018)

## Part I   Liquidation, Termination, or Dissolution (continued)

Note. If the organization distributed all of its assets during the tax year, then Form 990, Part X, column (B), line 16 (Total assets), and line 26 (Total liabilities), should equal -0-

| | | | Yes | No |
|---|---|---|---|---|
| 3 | Did the organization distribute its assets in accordance with its governing instrument(s)? If "No," describe in Part III. . . . . . . . . . | 3 | | |
| 4a | Is the organization required to notify the attorney general or other appropriate state official of its intent to dissolve, liquidate, or terminate?. . . . | 4a | | |
| b | If "Yes," did the organization provide such notice? . . . . . . . . . . . . . . . . . . . . . . . . . | 4b | | |
| 5 | Did the organization discharge or pay all of its liabilities in accordance with state laws?. . . . . . . . . . . . . | 5 | | |
| 6a | Did the organization have any tax-exempt bonds outstanding during the year? . . . . . . . . . . . . . | 6a | | |
| b | If "Yes" on line 6a, did the organization discharge or defease all of its tax-exempt bond liabilities during the tax year in accordance with the Internal Revenue Code and state laws? . . . . . . . . . . | 6b | | |
| c | If "Yes" on line 6b, describe in Part III how the organization defeased or otherwise settled these liabilities. If "No" on line 6b, explain in Part III | | | |

## Part II   Sale, Exchange, Disposition, or Other Transfer of More Than 25% of the Organization's Assets.
Complete this part if the organization answered "Yes" on Form 990, Part IV, line 32, or Form 990-EZ, line 36. Part II can be duplicated if additional space is needed.

| 1 | (a) Description of asset(s) distributed or transaction expenses paid | (b) Date of distribution | (c) Fair market value of asset(s) distributed or amount of transaction expenses | (d) Method of determining FMV for asset(s) distributed or transaction expenses | (e) EIN of recipient | (f) Name and address of recipient | (g) IRC section of recipient(s) (if tax-exempt) or type of entity |
|---|---|---|---|---|---|---|---|
| See Additional Data Table | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| | | | Yes | No |
|---|---|---|---|---|
| 2 | Did or will any officer, director, trustee, or key employee of the organization | | | |
| a | Become a director or trustee of a successor or transferee organization?. . . . . . . . . . . . . . . . . . | 2a | | |
| b | Become an employee of, or independent contractor for, a successor or transferee organization?. . . . . . . . . . | 2b | | |
| c | Become a direct or indirect owner of a successor or transferee organization? . . . . . . . . . . . . . . | 2c | | |
| d | Receive, or become entitled to, compensation or other similar payments as a result of the organization's liquidation, termination, or dissolution?. . . . | 2d | | |
| e | If the organization answered "Yes" to any of the questions on lines 2a through 2d, provide the name of the person involved and explain in Part III ▶ | | | |

Case 24-80487    Doc 186    Filed 06/24/25    Entered 06/24/25 14:24:43    Desc Main
Document    Page 43 of 74

**Part III**   **Supplemental Information.** Provide the information required by Part I, lines 2e and 6c, and Part II, line 2e. Also complete this part to provide any additional information.

| Return Reference | Explanation |
|---|---|

**Schedule N (Form 990 or 990-EZ) (2018)**

**Additional Data**

Software ID:
Software Version:
EIN: 73-1288960
Name: BACONE COLLEGE DEVELOPMENT CORPORATION

**Form 990, Schedule N, Part II - Sale, Exchange, Disposition or Other Transfer of more than 25% of the Organization's Assets. Complete this part if the organization answered "yes" on Form 990, Part IV, line 32, or Form 990-EZ, line 36. Part II can be duplicated if additional space is needed.**

| | (a) Description of asset(s) distributed or transaction expenses paid | (b) Date of distribution | (c) Fair market value of asset(s) distributed or amount of transaction expenses | (d) Method of determining FMV for asset(s) distributed or transaction expenses | (e) Ein of recipient | (f) Name and address of recipient | (g) IRC Code section of recipient(s) (if tax-exempt) or type of entity |
|---|---|---|---|---|---|---|---|
| 1 | NORTHPOINTE SHOPPING CENTER | 12-14-2018 | 2,552,287 | ACTUAL COST | 47-1834965 | HIGHWAY 69 OUTLET INCORPORATED 715 S 32ND ST MUSKOGEE, OK 744015014 | |
| | LOTS B & C OMEGA WALMART CENTER | 10-05-2018 | 667,706 | ACTUAL COST | 73-1422036 | BARTLESVILLE PROPERTY ASSOCIATESLL 43 CEDAR RIDGE RD BROKEN ARROW, OK 740111142 | CORPORATION |

OMB No 1545-0047

**SCHEDULE O**
**(Form 990 or 990-EZ)**

Department of the Treasury

# Supplemental Information to Form 990 or 990-EZ

**Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information.**
▶ **Attach to Form 990 or 990-EZ.**
▶ **Go to** _www.irs.gov/Form990_ **for the latest information.**

# 2018

**Open to Public Inspection**

Name of the organization
BACONE COLLEGE DEVELOPMENT CORPORATION

**Employer identification number**

73-1288960

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION B, LINE 11B | NO REVIEW WAS OR WILL BE CONDUCTED |

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION C, LINE 19 | THE ORGANIZATION'S GOVERNING DOCUMENTS, CONFLICT OF INTEREST POLICY AND FINANCIAL STATEMENTS ARE AVAILABLE TO EMPLOYEES ON THE NETWORK DRIVE AND MADE AVAILABLE TO THE PUBLIC UPON REQUEST |

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| FORM 990, PART XII, LINE 2C | AUDIT FIRM MAKES RECOMMENDATIONS,CFO CONDUCTS INTERVIEW AND PRESENTS FINDINGS TO FINANCE COMMITTEE FOR APPROVAL |

# SCHEDULE R
## (Form 990)

# Related Organizations and Unrelated Partnerships

OMB No 1545-0047

**2018**

▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990* for instructions and the latest information.

Department of the Treasury
Internal Revenue Service

**Open to Public Inspection**

Name of the organization
BACONE COLLEGE DEVELOPMENT CORPORATION

**Employer identification number**
73-1288960

---

**Part I** | Identification of Disregarded Entities Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

---

**Part II** | Identification of Related Tax-Exempt Organizations Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? | |
|---|---|---|---|---|---|---|---|
| | | | | | | **Yes** | **No** |
| **(1)** BACONE COLLEGE 2299 OLD BACONE ROAD MUSKOGEE, OK 74403 73-0590036 | SEE PART VII | OK | 501(C)(3) | SCHOOL | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990.     Cat No 50135Y     Schedule R (Form 990) 2018

## Part III Identification of Related Organizations Taxable as a Partnership Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related organizations treated as a partnership during the tax year.

| (a)<br>Name, address, and EIN of<br>related organization | (b)<br>Primary<br>activity | (c)<br>Legal<br>domicile<br>(state<br>or<br>foreign<br>country) | (d)<br>Direct<br>controlling<br>entity | (e)<br>Predominant<br>income(related,<br>unrelated,<br>excluded from<br>tax under<br>sections 512-<br>514) | (f)<br>Share of<br>total income | (g)<br>Share of<br>end-of-year<br>assets | (h)<br>Disproportionate<br>allocations? | | (i)<br>Code V-UBI<br>amount in box<br>20 of<br>Schedule K-1<br>(Form 1065) | (j)<br>General or<br>managing<br>partner? | | (k)<br>Percentage<br>ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

## Part IV Identification of Related Organizations Taxable as a Corporation or Trust Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a)<br>Name, address, and EIN of<br>related organization | (b)<br>Primary activity | (c)<br>Legal<br>domicile<br>(state or foreign<br>country) | (d)<br>Direct controlling<br>entity | (e)<br>Type of entity<br>(C corp, S corp,<br>or trust) | (f)<br>Share of total<br>income | (g)<br>Share of end-of-<br>year assets | (h)<br>Percentage<br>ownership | (i)<br>Section 512(b)<br>(13) controlled<br>entity? | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Yes | No |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Case 24-80487     Doc 186     Filed 06/24/25     Entered 06/24/25 14:24:43     Desc Main
Document     Page 50 of 74

## Part V   Transactions With Related Organizations   Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36.

**Note.** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule

**1** During the tax year, did the organization engage in any of the following transactions with one or more related organizations listed in Parts II-IV?

| | | (a) Name of related organization | (b) Transaction type (a-s) | (c) Amount involved | (d) Method of determining amount involved | | Yes | No |
|---|---|---|---|---|---|---|---|---|
| **a** | Receipt of **(i)** interest, **(ii)** annuities, **(iii)** royalties, or **(iv)** rent from a controlled entity . | | | | | **1a** | | No |
| **b** | Gift, grant, or capital contribution to related organization(s) . | | | | | **1b** | | No |
| **c** | Gift, grant, or capital contribution from related organization(s) . | | | | | **1c** | | No |
| **d** | Loans or loan guarantees to or for related organization(s) . | | | | | **1d** | | No |
| **e** | Loans or loan guarantees by related organization(s) . | | | | | **1e** | | No |
| | | | | | | | | |
| **f** | Dividends from related organization(s) . | | | | | **1f** | | No |
| **g** | Sale of assets to related organization(s) . | | | | | **1g** | | No |
| **h** | Purchase of assets from related organization(s) . | | | | | **1h** | | No |
| **i** | Exchange of assets with related organization(s) . | | | | | **1i** | | No |
| **j** | Lease of facilities, equipment, or other assets to related organization(s) . | | | | | **1j** | | No |
| | | | | | | | | |
| **k** | Lease of facilities, equipment, or other assets from related organization(s) . | | | | | **1k** | | No |
| **l** | Performance of services or membership or fundraising solicitations for related organization(s) . | | | | | **1l** | | No |
| **m** | Performance of services or membership or fundraising solicitations by related organization(s) . | | | | | **1m** | | No |
| **n** | Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) . | | | | | **1n** | | No |
| **o** | Sharing of paid employees with related organization(s) . | | | | | **1o** | | No |
| | | | | | | | | |
| **p** | Reimbursement paid to related organization(s) for expenses . | | | | | **1p** | | No |
| **q** | Reimbursement paid by related organization(s) for expenses . | | | | | **1q** | | No |
| | | | | | | | | |
| **r** | Other transfer of cash or property to related organization(s) . | | | | | **1r** | | No |
| **s** | Other transfer of cash or property from related organization(s) . | | | | | **1s** | | No |

**2** If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds

| (a) Name of related organization | (b) Transaction type (a-s) | (c) Amount involved | (d) Method of determining amount involved |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Case 24-80487   Doc 136   Filed 06/24/25   Entered 06/24/25 14:24:43   Desc Main Document   Page 51 of 74

## Part VI  Unrelated Organizations Taxable as a Partnership  Complete if the organization answered "Yes" on Form 990, Part IV, line 37.

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| **(a)**<br>Name, address, and EIN of entity | **(b)**<br>Primary activity | **(c)**<br>Legal<br>domicile<br>(state or<br>foreign<br>country) | **(d)**<br>Predominant<br>income<br>(related,<br>unrelated,<br>excluded from<br>tax under<br>sections 512-<br>514) | **(e)**<br>Are all partners<br>section<br>501(c)(3)<br>organizations? | | **(f)**<br>Share of<br>total<br>income | **(g)**<br>Share of<br>end-of-year<br>assets | **(h)**<br>Disproportionate<br>allocations? | | **(i)**<br>Code V-UBI<br>amount in box<br>20<br>of Schedule<br>K-1<br>(Form 1065) | **(j)**<br>General or<br>managing<br>partner? | | **(k)**<br>Percentage<br>ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Yes | No | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

Schedule R (Form 990) 2018

**Part VII** Supplemental Information

Provide additional information for responses to questions on Schedule R (see instructions)

| Return Reference | Explanation |
|---|---|
| PRIMARY ACTIVITY, SCHEDULE R, PART II, LINE 1 | LIBERAL ARTS, CAREER AND CONTINUING EDUCATION PROGRAMS |

NOT AN OFFICIAL COPY

PA
7052

# EXHIBIT D

I-2020-003224  Book 4681  Pg:  54
03/27/2020 10:24 am    Pg 0054-0057
Fee:   $ 24.00     Doc:  $ 4,500.00
Dianna Cope - Muskogee County Clerk
State of Oklahoma

Pioneer Abstract & Title Co. of Muskogee
File Number 1919722
DOC STAMPS:
P.I.D.#
Property Address:  202 W Okay
                              Muskogee OK 74401
Mailing Address:
Underwriter: Old Republic National Title Insurance Company

PCS 24-
1919722

### Corporation
### WARRANTY DEED

KNOW ALL MEN BY THESE PRESENTS:

THAT Bacone College Development Corporation and Bacone College, a corporation, party of the first part, in consideration of the sum of   Ten and 00/100 ($10.00)  dollars, and other valuable considerations, in hand paid, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell and convey unto  Muskogee Public Schools I-020,  party of the second part, the following described real property and premises situate in Muskogee County, State of Oklahoma, to-wit:

A tract of land situated in the East half of the SW¼ of Section 18, Township 15 North, Range 19 East of the Indian Base and Meridian, Muskogee County, State of Oklahoma: with the basis of bearing of this description being NAD83 Oklahoma State Plane, and prepared on 3/13/2020 by Tony Robison, LS # 1686: said tract of land being more particularly described by metes and bounds as follows:

Commencing at the SW Corner of Section 18; thence N88°22'47"E along the South line of Section 18 a distance of 2409.48 feet to the Southeast Corner of the West half of the East half of the East half of the SE¼ of the SW¼; thence N01°39'54"W along the East line of said West half of the East half of the East half of the SE¼ of the SW¼ a distance of 243.12 feet to a point on the North right-of-way line of U.S. Highway 62 also being the Point of Beginning; thence continuing N01°39'54"W a distance of 1077.27 feet; thence N88°29'32"E a distance of 162.23 feet to a point on the East line of the SW¼ of Section 18; thence N01°36'10"W along the East line of the SW¼ a distance of 522.62 feet; thence S88°53'57"W a distance of 607.67 feet; thence S3°01'4W" a distance of 1598.50 feet to a point on the North right of way line of U.S. Highway 62; thence along said right of way line on a curve to the left with a radius of 2841.40 feet an arc length of 36.26 feet and a chord which bears N88°31'01"E a distance of 36.26 feet; thence S80°00'01"E along the North right of way line of U.S. Highway 62 a distance of 50.70 feet; thence N88°41'01"E along the North right of way line of U.S. Highway 62 a distance of 502.96 feet to the point of beginning.

together with all the improvements thereon and the appurtenances thereunto belonging, and warrant the title to the same.

TO HAVE AND TO HOLD said described premises unto the said parties of the second parties, as joint tenants, and to the heirs and assigns of the survivor, forever, free, clear and discharged of and from all former grants, charges, taxes, judgments, mortgages and other liens and incumbrances of whatsoever nature.

IN WITNESS WHEREOF, the said party of the first part has caused these presents to be signed this     25     day of March, 2020.

Bacone College Development Corporation                 Bacone College

_____                              _____
Dr. Ferlin Clark, Board of Director                              Dr. Ferlin Clark, President

State of Oklahoma
Muskogee County
Documentary Stamps $ 4,500.00

OKCOUNTYRECORDS

4

I-2020-003224 Book 4681 Pg: 55
03/27/2020 10:24 am Pg 0054-0057
Fee: $ 24.00 Doc: $ 4,500.00
Dianna Cope - Muskogee County Clerk
State of Oklahoma

## CORPORATION ACKNOWLEDGMENT

STATE OF New Mexico County of McKenley ss

On this ___ day of **March, 2020**, before me, the undersigned, a Notary Public in and for the County and State aforesaid, personally appeared **Dr. Ferlin Clark, Board of Director of Bacone College Development Corporation,** to me known to be the identical person who signed the name of the maker thereof to the within and foregoing instrument as its Board of Director and acknowledged to me that he executed the same as their free and voluntary act and deed, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and seal the day and year last above written.

My Commission expires: 8/25/2021

_Wanda Johnson_
Notary Public

## CORPORATION ACKNOWLEDGMENT

STATE OF New Mexico County of McKenley ss

On this ___ day of **March, 2020**, before me, the undersigned, a Notary Public in and for the County and State aforesaid, personally appeared **Dr. Ferlin Clark, President of Bacone College,** to me known to be the identical person who signed the name of the maker thereof to the within and foregoing instrument as its **President** and acknowledged to me that he executed the same as their free and voluntary act and deed, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and seal the day and year last above written.

My Commission expires: 8/25/2021

_Wanda Johnson_
Notary Public

VIEW ADDITIONAL LAND RECORDS AT
OKCOUNTYRECORDS.COM



BACONE
COLLEGE
*The Pride of the Nations*

2299 Old Bacone Road
Muskogee, Ok 74403-1568
Phone: (918) 683-4581
www.bacone.edu

I-2020-003224  Book 4681  Pg:  56
03/27/202010:24 am   Pg 0054-0057
Fee:     $ 24.00      Doc:  $ 4,500.00
Dianna Cope - Muskogee County Clerk
State of Oklahoma

### RESOLUTION OF THE BOARD OF TRUSTEES
### OF BACONE COLLEGE

**BE IT RESOLVED** that the Board of Trustees of Bacone College approved the sale of

20.96 Acres to Muskogee Public Schools for Three Million Dollars ($3,000,000) with a vote of

Nine (9) in favor and One (1) opposed.  Mr. Quinton Roman Nose, Board of Director and/or Dr.

Ferlin Clark, President, are authorized on behalf of the Bacone College to take all action

necessary to complete the sale transaction of the property with the potential buyer and related

entities.

Dated this 9th day of March, 2020.

APPROVED:

Quinton Roman Nose
Chairman, Board of Trustees

Dr. Lahoma Schultz
Secretary, Board of Trustees

WWW.BACONE.EDU

VIEW ADDITIONAL LAND RECORDS AT
OKCOUNTYRECORDS.COM



**BACONE COLLEGE**
*The Pride of the Nations*

2299 Old Bacone Road
Muskogee, Ok 74403-1568
Phone: (918) 683-4581
www.bacone.edu

I-2020-003224  Book 4681  Pg: 57
03/27/202010:24 am  Pg 0054-0057
Fee:    $ 24.00    Doc:  $ 4,500.00
Dianna Cope - Muskogee County Clerk
State of Oklahoma

### RESOLUTION OF THE BOARD OF DIRECTORS
### OF BACONE COLLEGE DEVELOPMENT CORPORATION

BE IT RESOLVED that the Board of Directors of the Bacone College Development

Corporation approved the sale of 20.96 Acres to Muskogee Public Schools. Mr. Quinton Roman

Nose, BCDC Board of Director and/or Dr. Ferlin Clark, BCDC Board of Director, are authorized

on behalf of the Bacone College Development Corporation to take all action necessary to

complete the sale of the property with the potential buyer for the sale price of $3,000,000.

Dated this 9th day of March, 2020.

APPROVED:

Quinton Roman Nose
Board of Director

Dr. Lahoma Schultz
Secretary, Board of Trustees

W W W . B A C O N E . E D U

VIEW ADDITIONAL LAND RECORDS AT
OKCOUNTYRECORDS.COM

# EXHIBIT E

**AGREEMENT FOR TEMPORARY CUSTODY, CATALOGING, AND APPRAISAL OF ARTWORKS – GREEN HOUSE GALLERY**
Date: May 2, 2025
Location: Tahlequah, Oklahoma

This Agreement is made and entered into as of the above date by and between:

The Bacone College Development Corporation, an Oklahoma nonprofit organization, through its Director, Dr. Les Hannah (hereinafter referred to as the "BCDC"),
and
The Green House Gallery, a gallery located in Huntsville, Utah, through its representative Morgan Gilmore (hereinafter referred to as the "Gallery").

WHEREAS:

- The BCDC owns and oversees the Bacone Collection (hereinafter referred to as the "Collection").

- Custody of a portion of the Collection (the "Transferred Pieces") is to be temporarily transferred to the Gallery.

- The Collection is not currently adequately cataloged, and no formal appraisals exist for the Transferred Pieces.

- The BCDC wishes to establish and ensure the following:

1. Justification

Because of the current state of the Collection, there is an urgent need for BCDC to temporarily transfer custody of the Transferred Pieces to the Gallery due to the ongoing the threats of theft or other manner of loss, and the lack of an appropriate systematic storage and inventory system. Additionally, some pieces of the collection are subject to NAGPRA and repatriation is required by law (specifically Kachina dolls within the collection.

2. Temporary Division of the Collection

Custody transferred to the Green House Gallery of select:

- Designated Artwork and Prints

- Kachina Dolls (to be repatriated)
- Baskets

**Retained by the BCDC:**

- Designated Artwork, Prints and Photographs
- Stone and wood carvings
- Books
- Stone tools and artifacts
- Individual pieces that would otherwise fit the descriptions in the list of items in the Gallery's custody, but that have been specifically designated by the BCDC for retention

**3. Gallery Support**

The Gallery provides a solution through donations of financial resources and expertise to:

- Keep the Collection together and continue its legacy
- Provide urgently needed expert restoration and climate-controlled storage at no cost to the BCDC
- Repatriate ceremonial and burial items to appropriate tribes

**NOW, THEREFORE, the parties agree as follows:**

**1. Description of the Transferred Pieces**

Each of the Transferred Pieces will be photographed.

**2. Term of Agreement**

This Agreement shall continue for a term of ten (10) years, effective May 19, 2025.

**3. Responsibilities of the Gallery**

The Gallery agrees to:

- Share in the secure transportation of the Transferred Pieces, bearing the expense for same
- Store the Transferred Pieces in a safe, climate-controlled, and secure environment
- Allow BCDC reasonable access for inspection
- Return items within a reasonable time if requested

### 4. Ownership

Ownership of all Transferred Pieces remains with the BCDC. This Agreement does not transfer ownership of any of the Transferred Pieces.

### 5. Insurance

The Gallery shall maintain insurance on the Transferred Pieces, and accepts liability for loss of or damage to the Transferred Pieces due to negligence or misconduct, whether the offending negligence or misconduct is that of the Gallery, or of a third-party (excepting acts of God).

### 6. Liability

The Gallery assumes full responsibility for the safety and integrity of the Transferred Pieces. Any incident involving loss, theft, or damage of the Transferred Pieces must be reported immediately to the BCDC.

### 7. Reporting and Communication

The Gallery shall provide:

- Monthly progress updates on cataloging and appraisal

### 8. Return of the Transferred Pieces

Upon conclusion or termination of this Agreement, the Transferred Pieces shall be returned to the BCDC at a location designated by the BCDC at the time return is demanded by either party. Regardless of the location of the Transferred Pieces, either before or during their return to BCDC, each of the parties is entitled to full and identical rights of inspection of the Transferred Pieces. Each of the parties will participate in providing photos (and when possible, additional information and inventory) for the returned Transferred Pieces. Return receipt will be provided to each party.

### 9. Entire Agreement

This document constitutes the full and final agreement between the parties and supersedes any prior discussions or understandings.

**IN WITNESS WHEREOF, the parties have executed this Agreement as of the date written above.**

_Dr. Les Hannah_

Dr. Les Hannah

Director, Bacone College Development Corporation (BCDC)

Date: _5/2/25_

State of Oklahoma
County of Cherokee

On this 2nd day of May, 2025, before me, Everett Rosenthal, a Notary Public in and for said State, personally appeared Leslie Hannah, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_Everett Rosenthal_

EVERETT ROSENTHAL
Notary Public - State of Oklahoma
Commission Number 25003230
My Commission Expires Mar 18, 2029

_Morgan Gilmore_

Morgan Gilmore

Representative, Green House Gallery

Date: _May 2, 2025_

State of Oklahoma
County of Cherokee

On this 2nd day of May, 2025, before me, Everett Rosenthal, a Notary Public in and for said State, personally appeared Morgan Gilmore, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_Everett Rosenthal_

EVERETT ROSENTHAL
Notary Public - State of Oklahoma
Commission Number 25003230
My Commission Expires Mar 18, 2029

Docusign Envelope ID: 6608D322-A97F-4C3F-993C-1F971BB718E2

# EXHIBIT F



## Commercial Real Estate Listing and
## Auction Service Agreement

**THIS AGREEMENT** is entered into by and between Williams & Williams Marketing Services, Inc., and/or its wholly-owned subsidiary, Williams & Williams Worldwide Real Estate, LLC ("Broker"), and Bacone College Development Corporation, the undersigned owner of real property ("Seller"). Broker and Seller agree as follows:

1. **Exclusive Listing Agreement**. Seller hereby grants to Broker and Broker hereby accepts the exclusive and irrevocable right and privilege on behalf of the Seller to offer for sale the property more particularly described in the Legal Description attached hereto as Exhibit "A" and made a part hereof (all of which is hereinafter collectively referred to as the "Property") in accordance with the provisions of this Agreement. The term of this Agreement shall begin on the 8th day of October , 2024 and shall continue through the 5th day of February , 2025 (hereinafter referred to as the "Listing Period"), unless otherwise extended or terminated in accordance with this Agreement. Upon full execution of a contract for sale and purchase or exchange of real estate in connection with the Property ("Sales Contract"), all rights and obligations of this Agreement shall automatically extend through the date of the actual closing (the "Closing Date") of said Sales Contract and conveyance of the Property. The exclusive right granted herein shall include, without limitation, the exclusive right to list the Property and sell by public auction ("Auction"), private sale, exchange or otherwise, on terms and conditions herein stated.

2. **Listing for Sale With or Without Reserve**.
[Select 2.1 or 2.2 below.]

☒2.1 Listing for Sale With Reserve. Unless otherwise mutually agreed by the parties in writing, certain Properties on the Exhibit A shall be sold subject to acceptance by the Seller as the Seller may determine within its sole discretion. Notwithstanding the foregoing, Seller hereby agrees that in the event that the Property receives a high bid or other offer at or exceeding the amount of Five Hundred Thousand Dollars ($500,000) (the "Reserve Price"), Seller shall be deemed to have accepted such offer and shall execute a Sales Contract with the high bidder or other offeror (the "Buyer") relating thereto in accordance with Section 4 below. **Broker - ☒ shall not ☐ shall - disclose the Reserve Price.**

☐2.2 Listing for Sale Without Reserve. Seller hereby agrees that certain Properties on the Exhibit A shall be Auctioned "absolute, without reserve," so that Seller shall be deemed to have accepted the highest bid from a qualified bidder or other offeror (the "Buyer") without limiting condition as to the amount of the high bid or other offer or the nature of the Buyer and shall execute a Sales Contract with the Buyer relating thereto in accordance with Section 4 below.

3. **Compensation**.

3.1. Seller agrees to pay a Commission in an amount described below ("Commission") as and for the compensation of Broker, in any of the following events:

3.1.1. Upon the transfer of any interest in the Property during the Listing Period, whether by sale, exchange, lease, or any other means of transfer ("Transfer"), whether procured by Broker, Seller or a third party; it being understood, however, that the term of this Agreement shall be extended, to the extent permitted under applicable law, to accommodate the extension of the Closing Date as set forth in Section 1 above or in connection with any transaction that may be delayed on account of title defects or other impediments to Transfer that are out of Broker's control.

3.1.2 The Transfer of the Property within sixty (60) days after the termination of this Agreement, if with anyone whom Broker had introduced or shown the Property, or with whom Broker had communicated or negotiated concerning the Property, or who had submitted any proposal or offer in connection with the Property, prior to the termination of this Agreement.

3.1.3 Seller refuses or fails to accept an offer from a Buyer who is ready, willing, and able to purchase the Property, at or exceeding the price and terms stated in this Agreement, or at such other price and/or under such other terms to which Seller has assented in writing, or defaults on an executed Sales Contract or agrees with Buyer to cancel an executed Sales Contract.

Broker Initial _____

Seller Initial _____

Docusign Envelope ID: 6608D322-A97F-4C3F-993C-1F971BB718E2

3.2     Commission.

3.2.1     Listing for Sale With Reserve.  With respect to a Listing for Sale With Reserve, Seller agrees to pay a Commission in an amount equal to six percent (6%) of the high bid/highest offer ("Sales Price") on the Property, with a minimum as seen on Exhibit A per Property, payable at closing.

3.2.2     Listing for Sale Without Reserve. With respect to a Listing for Sale Without Reserve, Seller agrees to pay a Commission in an amount equal to six percent (6%) of the Sales Price of the Property, payable at closing.

3.3     Buyer's Premium.

3.3.1     In any event in which Broker is entitled to a Commission pursuant to Section 3 above, Broker shall also be entitled to a buyer's premium ("Buyer's Premium") of five percent (5 %) of the Sales Price of the Property, payable at closing by Buyer, in addition to the Sales Price.

3.3.2     Seller hereby authorizes Broker to elect to allocate a portion of the Buyer's Premium to which it is entitled under paragraph 3.3.1 above to other real estate broker(s), including co-operating broker(s) or broker(s) representing only the buyer, if and as Broker may determine within Broker's sole discretion.

3.4     Auction Fee.

3.4.1     Listing for Sale With Reserve. With respect to a Listing for Sale With Reserve, a non-refundable auction fee ("Auction Fee") in the amount of $0.00 shall be due to Broker and payable by Seller concurrently with the execution of this Agreement. Accordingly, upon sale or exchange of the Property listed hereunder, Broker shall be entitled to the Commission LESS the Auction Fee.  If the Commission to which Broker is entitled is less than the Auction Fee, Broker shall not owe Seller, but will not receive a Commission. If the Property listed hereunder is not sold or exchanged, Broker's only compensation will be the Auction Fee.

3.4.2     Listing for Sale Without Reserve. With respect to a Listing for Sale Without Reserve, no Auction Fee shall be due and payable.

3.5     Survival.  The compensation rights of Broker and the compensation obligations of Seller set forth herein shall survive termination or expiration of this Agreement.

4.      Sales Contract.  In the event a Sales Contract is entered into with a Buyer, Seller will promptly, upon Broker's request, deposit in escrow all instruments necessary to complete the sale and agrees that:

4.1     Unless the Sales Contract expressly provides otherwise, Broker shall receive and forward to the Escrow Agent for holding any earnest money deposit, which may be in the form of the Buyer's personal check endorsed for deposit without recourse, in accordance with the terms of the Sales Contract, applicable law, rules, and regulations governing the custody of such funds;

4.2     Prior to the Closing Date, Seller agrees to authorize preliminary title to allow a title insurance commitment for purchase by the buyer if the buyer chooses to allow for insurable title to convey to the buyer;

4.3     Reimbursable Expenses.  If a Property fails to close for any reason, Seller shall pay to Auction Company any survey fees or other reimbursable expenses incurred by Auction Company concerning the Property.  Auction Company shall not incur reimbursable expenses without the written consent of Seller;

4.4     At the time prescribed in the Sales Contract, to convey the Property by deed of the Seller's choosing (Warranty Deed, Special Warranty Deed, or other legal deed) to Buyer, free and clear of all liens and encumbrances, except those, if any, specifically reserved in the Sales Contract; and

4.5     Unless otherwise provided in the Sales Contract, all ad valorem taxes, interest, rents and other continuing items shall be prorated to the date of transfer, except personal property taxes for the entire year, if any, shall be paid by Seller.

5.      **Buyer Default; Forfeited Earnest Money**.  In the event a bidder forfeits earnest money under a contract or agreement to purchase a Property, the full amount of the earnest money shall be divided between the parties hereto as follows:

Broker Initial _____     Seller Initial _____  2



5.1     If no Auction Fee is paid pursuant to Section 3.4, the marketing fees calculated as two percent (2%) of the Reserve Price shall first be refunded to Auction Company. The remainder of the forfeited earnest money shall be split equally, with Seller receiving 50% thereof and Auction Company receiving 50% thereof, except that Auction Company's portion shall, in no event, exceed the Commission on the expected sale.

5.2     If the Auction Fee is paid upon the signing of this Agreement, the forfeited earnest money shall be split, with Seller receiving 50% thereof and Auction Company receiving 50% thereof, except that Auction Company's portion shall, in no event, exceed the Commission on the expected sale.

5.3     If either Auction Company or Seller incurs reasonable attorney fees and/or costs which are directly related to obtaining the forfeited earnest money, these attorney fees and/or costs shall be paid out of the forfeited earnest money prior to division of the earnest money.  If Seller releases a bidder or waives a bidder's forfeiture of earnest money, Seller will not be relieved of its obligation to pay Auction Company the Commission on the expected sale.

6.      **Pre-Auction Offers**.  Any pre-Auction offers received by Broker in connection with the Property will be submitted to Seller for Seller's acceptance or rejection, as Seller may determine within Seller's sole discretion; and any pre-Auction sales resulting therefrom will be treated similarly to a Property sold at Auction in terms of applicable compensation payable to Broker hereunder as outlined in Section 3 above.

7.      **Seller Authorizations**.  Seller authorizes Broker to perform all actions necessary to market and sell the Property listed hereunder and to conduct an Auction, and to perform its duties and responsibilities as described herein, including without limitation, to place an "auction" notice and signage on the Property to the extent permitted by applicable law, and remove all other signs if necessary; at Seller's expense, turn on, or leave on, all utilities, and to authorize servicemen to do so; obtain a key or lock-box code or re-key the locks to or place a new lock-box on the Property and furnish keys or codes to others as necessary to show the Property or to carry out the objectives of this Agreement and have access to the Property for the purpose of showing it to prospects at any reasonable hour; permit inspections of the Property, including any third party inspections ordered by potential Buyers or Brokers prior to the sale, exchange or Auction of the Property, as well as open houses, and to disseminate any information available relevant to inspections that have been made; engage qualified sub-contractors and other licensed professionals to assist in Broker's duties; order the abstract(s) brought to date and/or a title exam(s) prior to an Auction; utilize the services of a third party escrow and title company; obtain all information pertaining to any present mortgage on the Property from any mortgage or mortgage service company and to furnish information pertaining to the Property to any prospective lender; offer the Property without regard to sex, race, religion, color, ancestry, handicap, familial status, or national origin; advertise a nominal opening bid for use at an Auction and determine the best date, time, place and method for such Auction, unless otherwise expressly set forth herein, and to regulate the bidding and the increments of bidding at the Auction, and disclose the Seller as principal; to conduct any such Auction subject to and in accordance with the terms and conditions set forth in Broker's standard Terms and Conditions of Sale applicable to the Auction; if tracts are to be offered separately, to utilize the services of a surveyor Seller recommends or hereby authorizes Broker to hire who shall place tract signs on all corners and/or describe the individual tracts to be sold (this cost shall be passed on to the Buyer(s) upon closing, however, in the event the closing does not occur, Seller shall be responsible for the cost of the survey); promote, advertise and market each Property through any and all media and by any and all means now known or hereafter devised, including, without limitation, signage, print ads, the public internet, electronic media and online bidding, proxy bid, auction and trading platforms, such as Auction Network™ (a Broker affiliate), if and as Broker may determine within its sole discretion; implement mechanisms in connection with the above-referenced online platforms whereby automated estimations of market value may be made available to and/or comments may be posted by end-users in immediate conjunction with the Property; utilize independent contractors to provide auctioneer services, certain marketing, preservation, and/or platform auction methods including, without limitation, on-line, video, television, simulcast bidding, and any other methods and/or platforms in the sole discretion of the Broker; and to conduct all other duties and responsibilities of Broker subject to and in accordance with Exhibit "B" attached hereto.

8.      **Broker's Obligations; Disclaimers**.  Broker's sole duty shall be to use commercially reasonable efforts to affect a sale of the Property during the term of this Agreement, with the understanding that Broker makes no warranty or guaranty in connection with whether or not the Property will be sold or exchanged hereunder or the revenues that may or may not be derived therefrom and that Broker shall not be liable for any loss suffered by Seller relating to the Property or subject matter hereto including but not limited to a bidder refusing to enter into a contract, failing to tender an earnest deposit or full payment, or otherwise not completing a purchase of a Property. Broker shall not be charged with the custody of the Property listed hereunder, its management, maintenance, security, insuring, or repair.  Broker shall not offer commissions except at Broker's sole discretion, unless otherwise expressly provided herein.

9.      **Representations and Warranties; Indemnification; Seller's Obligations**.

Broker Initial _____     Seller Initial _____   3



9.1     Each party represents and warrants to the other party that: (i) such party has all appropriate consents, approvals and authority to enter into this agreement, (ii) the individuals executing this agreement have authority to bind such party thereto; and (iii) such party has all appropriate licenses, permits and authorizations to the extent required by law to carry out its responsibilities set forth herein.

9.2     Seller further warrants and represents to Broker that: (a) Seller's title to the Property (real and personal) is insurable and subject only to customary exceptions and restrictions of record (the "Permitted Exceptions") and Seller has consent from any secured lender authorizing the sale of the Property, and Seller's hazard and liability insurance on all the Property to be sold is current and shall remain in effect until transfer of possession to Buyer; (b) Seller has full power, right and authority to enter into this Agreement and convey title to the Property and in the manner and at the time prescribed herein will convey such title by Special Warranty Deed, Warranty Deed, or other legal conveyance (real property), and Bill of Sale (personal property) to the Buyer(s), or other outstanding contracts or agreements of any kind for the sale of the Property; (c) Seller shall not rely on Broker to provide services as an escrow agent/closer, title company, attorney, appraiser, surveyor, certified public accountant, property inspector, environmental consultant or any other expert for Seller and Seller has been expressly advised to seek independent advice from an attorney and any other expert of Seller's choosing regarding this Agreement and all other matters relating to the sale of the Property; (d) if the real Property has been damaged or affected by storm run-off water or flooding, or if any of the Property (real and personal) has/have any other material defect, easement or restriction, Seller has communicated same to Broker in the Seller's property condition disclosure statement ("Disclosure Statement") or other writing from Seller which by reference is made a part of this Agreement and Broker is hereby authorized to disclose to any potential Buyer any such defects and any other material information known by the Broker relating to the Property; (e) all of the information provided herewith, or which may be provided to Broker, or which may be incorporated into any Disclosure Statement, shall be true, complete and correct; and, (f) Seller shall not bid on any Property described herein unless otherwise expressly provided herein.

9.3     Seller hereby agrees to indemnify Broker, its successors, assigns, licensees, owners, officers, employees and agents, and hold them harmless from and against any and all claims, liability, losses, damages, costs, and expenses (including reasonable attorneys' fees and costs), judgments and penalties (collectively "Liabilities") arising out of, resulting from, or based upon the breach by Seller of any representation, warranty or covenant made under this Agreement, including, but not limited to, Seller's failure to (a) disclose the existence of any title defects, security agreements or secured claims against the Property or known or hidden material defects therein or (b) execute a Sales Contract with a qualified high-bidder or other Buyer of the Property or otherwise to close the sale of the Property in accordance with the terms and conditions hereof. Seller will give prompt notice to Broker of any actual or threatened lawsuit which may cause Liabilities hereunder and of which Seller becomes aware.

9.4     Seller agrees to (a) cooperate with Broker in connection with the sale of the Property hereunder and the carrying out of the purpose of this Agreement, and will refer all inquiries concerning the sale or other transfer of Property to the Broker during the term of this Agreement; (b) provide Broker with keys, lock-box code or other access to the Property and make the Property available for Broker to show during reasonable times; (c) commit no act which might tend to obstruct Broker's performance hereunder; (d) make available to Broker and prospective purchasers all data, records and documents pertaining to the Property; (e) promptly notify Broker of any changes in rentals and/or expenses of the Property; (f) make all legally required disclosures, including, without limitation, the preparation and delivery of any Disclosure Statement required under applicable law and the disclosure of any and all such other facts that materially affect the value of the Property and are not readily observable or known by a prospective Buyer; and (g) comply with all state and federal laws relating to the subject matter hereof.

9.5     Seller acknowledges that Broker has recommended that all valuables, such as coins, jewelry, furs, silver, guns, cameras, paintings, antiques, and the like, be removed from the Property, concealed or otherwise secured for safekeeping during the Listing Period, unless otherwise expressly set forth herein. In addition, Seller has been fully advised that neither Broker nor any of its employees or agents assume any responsibility for the acts of any other persons for any loss which may be sustained by Seller through unauthorized entry to the Property in any manner. Seller hereby assumes such risk of loss.

10.     **Trademarks; Publicity**.  No party hereto shall have the right to use any other party's trademark, service mark, trade name and/or logo(s) hereunder without the express, written authorization to do so by such other party in each instance. Neither party shall issue or authorize or permit the issuance of any advertising, publicity or other announcement released to the general public of any kind or nature relating to this Agreement, or to the other party, or to the other party's officers, directors, shareholders or employees, without the express prior written consent of the other party in each instance.

11.     **Content Rights**.  Seller hereby grants unto Broker the non-exclusive, irrevocable right and license to record, photograph, videotape or otherwise capture by electronic or other means the Auction conducted hereunder, the Property, any of Seller's trade names, trademarks, service marks and/or logos, and any related events and subject matter occurring during, prior to, or after such Auction in connection with any and all commercial announcements, advertisements, spots, preview/promotional programs, webcasts, and/or television programming produced by or on behalf of Broker relating thereto (collectively the "Content"), and to solely and

Broker Initial _____  JT            Seller Initial _____  LH            4

Docusign Envelope ID: 6608D322-A97F-4C3F-993C-1F971BB718E2

exclusively own, use, license, sell, digitize, catalog, stream, store, distribute, exhibit, perform, reproduce, display, adapt, edit, communicate, translate, compress, transmit, integrate, insert, market and promote such Content throughout the world in any and all forms and media and by whatever means whether now known or hereafter devised or created, including without limitation, by Internet and World Wide Web delivery, by television broadcast, home video exhibition, and/or any other electronic means and/or device, and in and to any and all allied, ancillary and subsidiary rights relating thereto and derived therefrom, in perpetuity.

12.    **Notice**.

12.1    All notices which either party shall be required or shall desire to give to the other party shall be given in writing in one of the following ways: by personal delivery; by facsimile; by deposit, registered; by certified mail, return receipt requested, postage prepaid, in the mail; by e-mail; or by deposit with Federal Express, DHL or other comparable overnight courier.

12.2    Addresses for purposes of delivery of notice hereunder are as set forth below, or as otherwise designated in writing after the effective date hereof.

12.3    The date of each such notice shall be conclusively determined as follows: on the day when personally delivered or of telecopying or of e-mailing; or on the third day after mailing; or on the day following deposit with the overnight courier, as the case may be.

13.    Additional Terms and Conditions.

14.    **Miscellaneous**. The parties understand that this is a binding agreement that cannot be modified, cancelled or terminated except upon their mutual written consent.  This Agreement constitutes the sole and entire agreement of the parties relating to the subject matter hereof and the parties have made no covenants, representations, or warranties not set forth herein.  This Agreement shall be binding on the parties' heirs, personal representatives, successors and/or permitted assigns. This Agreement, and Seller's rights and obligations hereunder, may not be assigned or otherwise transferred by Seller without the prior written consent of Broker. The parties have had the opportunity to review this Agreement and have had an opportunity to be advised by legal counsel as to its contents, requirements and liabilities, and have signed this Agreement fully understanding their respective rights, responsibilities and obligations as set forth herein. This Agreement shall create an independent contractor relationship between Broker and Seller; Broker shall at no time be considered an employee of Seller.

15.    **Severability**. If any clause of this Agreement is determined to be unenforceable or invalid, this Agreement shall be read as though such clause was not contained in the Agreement. The captions used in this Agreement shall have no substantive effect on the interpretation hereof.

16.    **Interpretation/Choice of Law**.  This Agreement shall not be construed against the drafting party but shall be construed as if both parties prepared it. This Agreement shall be interpreted according to the laws of the State of Oklahoma without regard to or application of choice-of-law rules or principles. Any dispute concerning the subject matter of this Agreement shall be submitted to binding arbitration before a single arbitrator pursuant to the rules and procedures of the American Arbitration Association in the State of Oklahoma, City of Tulsa, and each party will pay their own attorney's fees and costs. This Agreement may be signed in counterparts and a facsimile or scanned PDF of this Agreement shall be adequate and binding.

17.    **Notice regarding any absolute sale ("Auction Without Reserve")**: Seller acknowledges and agrees that the property of seller (or portion thereof if conspicuously noted on this agreement between auctioneer and seller) is to be sold and conveyed to the highest bidder at the auction sale regardless of price and without seller having any authority or legal right to refuse to convey the property (or portion thereof) to such high bidder. Seller is strongly advised to visit with an attorney licensed in the state where the property is located with regard to the difference in an auction without reserve (such as that intended by and to occur pursuant to this agreement) and an auction with reserve. seller is also strongly encouraged to visit with any lienholder or seller pursuant to any installment land sale (or similar) contract with regard to the nature of this auction agreement.



Broker Initial

Seller Initial          5

Docusign Envelope ID: 6608D322-A97F-4C3F-993C-1F971BB718E2

BY SIGNING THIS AGREEMENT, SELLER ACKNOWLEDGES THAT: (1) SELLER HAS READ ALL PROVISIONS AND DISCLOSURES MADE HEREIN; (2) SELLER UNDERSTANDS ALL SUCH PROVISIONS AND DISCLOSURES AND HAS ENTERED INTO THIS AGREEMENT VOLUNTARILY; AND, (3) SELLER IS NOT SUBJECT TO A CURRENT LISTING AGREEMENT WITH ANY OTHER BROKER.

**SIGNED AND AGREED TO effective as of the date set forth above:**

| **SELLER: Bacone College Development Corporation** | **BROKER: Williams & Williams Marketing Services, Inc., and/or its wholly-owned subsidiary, Williams & Williams Worldwide Real Estate, LLC** |
|---|---|
| Signature: *Leslie Hannah* | Signature: *[signature]* |
| Name: Leslie Hannah | Name: Elizabeth Fontana Fitzwilson |
| Mailing Address: PO Box 9 | License No.: 150739 |
| City/State/Zip: Muskogee, OK 74402 | 2448 East 81st Street. Suite 2600 |
| Email: hannah1@bacone.edu | Tulsa, Oklahoma 74137 |
| Phone: 9188224423 | www.williamsauction.com |
| 10/8/2024 | (918) 250-2012 |

Broker Initial *[initials]*

Seller Initial *[initials]*     6

Docusign Envelope ID: 6608D322-A97F-4C3F-993C-1F971BB718E2

**EXHIBIT "A"**
PROPERTY – LEGAL DESCRIPTION

| Property Description | Address | City | State | Zip | Reserve Price |
|---|---|---|---|---|---|
| Vacant Land on 39.45+/- Acres in Muskogee County Parcel Number: 4587-18-001-001-3-100-00* | 39.45+/- Acres on North York Street | Muskogee | OK | 74403 | $500,000 |

**\*All properties are Subject to a Final Survey where the Acreage may change. In the event of a change to acreage, an Addendum to the Listing Agreement will be prepared for signature by all Parties.**



Broker Initial _____

Seller Initial _____   7

Docusign Envelope ID: 6608D322-A97F-4C3F-993C-1F971BB718E2

**EXHIBIT "B"**
COMMERCIAL REAL ESTATE LISTING AND
AUCTION SERVICE AGREEMENT

This Exhibit "B" modifies that certain Commercial Real Estate Listing and Auction Service Agreement, dated the __ day of _____, 2024 (the "Agreement") by and between Williams & Williams Marketing Services, Inc., and/or its wholly owned subsidiary, Williams & Williams Worldwide Real Estate, LLC ("Broker"), and Bacone College and Bacone College Development Corporation ("Seller") (collectively, the "Parties").

**PROPERTY:**

**WHEREAS**, Part 7 of the Agreement authorizes Broker to contract with an independent Auctioneer to perform such services as may be necessary to carry out the auctioning of the Property (the "Services"); and

**WHEREAS**, Broker desires to engage _____ ("Auctioneer") to perform the Services; and

**WHEREAS**, Auctioneer has agreed to perform said Services.

**NOW THEREFORE**, the Parties agree as follows:
1. Broker has engaged _____ as Auctioneer, and Auctioneer has agreed to perform auction Services for the Property.
2. **No Further Modifications**. Except as specifically provided in this Exhibit "B," all terms and conditions set forth in the Agreement shall remain in full force and effect.

**Agreed and executed this _____ day of _____ 2024 by:**

| | |
|---|---|
| **SELLER: Bacone College Development Corporation**<br><br>Signature: _____<br>Name: _____ | |
| **AUCTIONEER:**<br><br><br>Signature: _____<br>Name:<br>Mailing Address:<br>City/State/Zip:<br>Email:<br>Phone: | **BROKER:** Williams & Williams Marketing Services, Inc., and/or its wholly owned subsidiary, Williams & Williams Worldwide Real Estate, LLC<br><br>Signature: _____<br>Name: Elizabeth Fontana Fitzwilson<br>License No.: 150739<br>2448 East 81st Street. Suite 2600<br>Tulsa, Oklahoma 74137<br>www.williamsauction.com<br>(918) 250-2012 |

Broker Initial  _____

Seller Initial _____ 8

## DocuSign

### Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 6608D322A97F4C3F993C1F971BB718E2 | | Status: Completed |
| Subject: Complete with Docusign: Commercial Broker Listing and Auction Service Agreement - Bacone Colle... | | |
| Source Envelope: | | |
| Document Pages: 8 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 16 | Kelsey Fasig |
| AutoNav: Enabled | | kelsey.fasig@williamsauction.com |
| EnvelopeId Stamping: Enabled | | IP Address: 20.230.207.62 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | |

### Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Kelsey Fasig | Location: DocuSign |
| 10/4/2024 9:36:10 AM | kelsey.fasig@williamsauction.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Leslie Hannah | *Leslie Hannah* | Sent: 10/4/2024 9:41:08 AM |
| hannahl@bacone.edu | 221F4A3A8B684B5... | Resent: 10/8/2024 8:38:34 AM |
| Security Level: Email, Account Authentication (None) | | Viewed: 10/8/2024 9:25:28 AM |
| | | Signed: 10/8/2024 9:27:03 AM |
| | Signature Adoption: Pre-selected Style | |
| | Using IP Address: 173.195.136.11 | |
| **Electronic Record and Signature Disclosure:** | | |
| Accepted: 10/8/2024 9:25:28 AM | | |
| ID: 29485c29-fedc-49d5-8b2c-85a093e04e60 | | |
| Fontana Fitzwilson | *Fontana Fitzwilson* | Sent: 10/8/2024 9:27:05 AM |
| fontana.fitzwilson@williamsauction.com | A3A81EE32D724D5... | Viewed: 10/8/2024 9:54:18 AM |
| EVP Sales | | Signed: 10/8/2024 9:57:16 AM |
| Security Level: Email, Account Authentication (None) | | |
| | Signature Adoption: Drawn on Device | |
| | Using IP Address: 108.147.171.2 | |
| | Signed using mobile | |
| **Electronic Record and Signature Disclosure:** | | |
| Accepted: 10/8/2024 9:54:18 AM | | |
| ID: 4a4e9697-0af1-4380-a1b8-83a16e61966f | | |
| Kelsey Fasig | **Completed** | Sent: 10/8/2024 9:57:18 AM |
| kelsey.fasig@williamsauction.com | | Viewed: 10/8/2024 10:12:14 AM |
| 4th | Using IP Address: 20.230.207.62 | Signed: 10/8/2024 10:13:20 AM |
| Williams & Williams via SmartVault | | |
| Security Level: Email, Account Authentication (None) | | |
| **Electronic Record and Signature Disclosure:** | | |
| Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
| --- | --- | --- |

| Notary Events | Signature | Timestamp |
| --- | --- | --- |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Envelope Sent | Hashed/Encrypted | 10/4/2024 9:41:08 AM |
| Certified Delivered | Security Checked | 10/8/2024 10:12:14 AM |
| Signing Complete | Security Checked | 10/8/2024 10:13:20 AM |
| Completed | Security Checked | 10/8/2024 10:13:20 AM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

**Electronic Record and Signature Disclosure**

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Williams & Williams via SmartVault (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

### How to contact Williams & Williams via SmartVault:

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: jacob.erhard@williamsauction.com

### To advise Williams & Williams via SmartVault of your new email address

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us
at jacob.erhard@williamsauction.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

### To request paper copies from Williams & Williams via SmartVault

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to jacob.erhard@williamsauction.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

### To withdraw your consent with Williams & Williams via SmartVault

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to jacob.erhard@williamsauction.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Williams & Williams via SmartVault as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Williams & Williams via SmartVault during the course of your relationship with Williams & Williams via SmartVault.