**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

FILED
at ___ O'clock & ___ min ___ M
NOV 16 2026 mla
JOLE AWTREY, Acting Clerk
United States Bankruptcy Court
Eastern District of Oklahoma

In re:
BACONE COLLEGE,
Debtor.

Case No. 24-80487-PRT
Chapter 7

**ALICIA NEVAQUAYA'S OBJECTION TO PROPOSED SALE AND DISPOSITION OF BACONE COLLEGE PROPERTY AND REQUEST FOR EVIDENTIARY HEARING**

Related Sale Motion: Docket No.

Alicia Nevaquaya submits this objection to the proposed sale and disposition of Bacone College's campus, art, library materials, museum collections, rare books, historical documents, and associated property. Objector requests an evidentiary hearing and preservation of disputed property pending determination of ownership, applicable treaty restrictions, corporate authorization, and cultural resource protections.

INTEREST OF OBJECTOR

1. I served as a professor at Bacone College from 2018 until its closure. During that period, I regularly worked additional hours and taught additional classes without additional compensation. I assert that compensation remains owed to me, subject to documentation and determination under the applicable employment agreements and policies. This objection does not substitute for any required proof of claim.

2. I also serve as an administrator of the Doc Tate Nevaquaya estate. I am the wife of Timothy Tate Nevaquaya, Doc Tate Nevaquaya's son. The estate asserts ownership and return rights concerning identified artwork held by Bacone, together with copyrights and any other Intellectual Property owned by the estate.

3. My individual compensation claim is distinct from the estate's ownership claims. I disclose the estate's interests and request their preservation pending determination of ownership and proper representation. I do not purport to represent any Tribal government.

4. Facts stated from my personal knowledge are distinguished below from contentions requiring supporting records and judicial determination.

OBJECTIONS

I. DOC TATE NEVAQUAYA ARTWORK HELD ON LOAN

5. The collection held by Bacone includes Doc Tate Nevaquaya artwork that, according to the arrangements known to me, was provided on loan subject to return or reversion

conditions. The estate disputes any characterization of these works as unrestricted property owned outright by Bacone.

6. I assert that the applicable return conditions have been triggered by Bacone's closure and cessation of the contemplated use. The precise terms and ownership history should be established through the loan, accession, and related records.

7. I object to the sale, auction, removal, or other disposition of these disputed works before the estate's ownership and return rights are determined. I request their exclusion from the proposed sale pending that determination and their return if the estate's entitlement is established.

8. The Trustee should identify every Doc Tate Nevaquaya work within Bacone's possession or control and produce associated accession records, loan agreements, correspondence, photographs, condition reports, provenance information, and records of movement or transfer.

II. COPYRIGHTS OWNED BY THE NEVAQUAYA ESTATE

9. The estate reserves all copyrights and other IP it owns in Doc Tate Nevaquaya's works for their remaining statutory terms.

10. Under 17 U.S.C. § 202, ownership of a physical artwork is distinct from ownership of copyright. I object to any proposed order or conveyance purporting to transfer estate-owned copyrights, reproduction rights, licensing rights, or other intellectual property that Bacone does not own.

11. The sale documents should identify precisely which intellectual property interests, if any, Bacone claims to possess and proposes to convey.

III. TREATY RESTRICTIONS AND REVERSIONARY RIGHTS

12. Article XIII of the Treaty with the Creeks of 1866 addresses lands granted for missionary or educational purposes. It restricts disposition of covered lands and buildings without the Secretary of the Interior's consent and approval, directs the application of sale proceeds, and provides for reversion to the Creek Nation after abandonment of the improvements for missionary or educational purposes for one year.

13. I contend that cessation of the qualifying uses has triggered reversion if the treaty's one-year abandonment requirement has been satisfied and its restrictions remain applicable to the property. This contention must be resolved through the relevant title, use, and legal records before unrestricted ownership is assumed.

14. I request examination of the original grant, parcel descriptions, chain of title, subsequent legislation and conveyances, federal approvals, and any authority asserted to have extinguished or modified the treaty restrictions.

15. The Court should determine what interests Bacone actually holds and may convey. Reversionary rights should not be treated as extinguished without identification of the legal and factual basis for doing so.

16. The Muscogee (Creek) Nation should receive a meaningful opportunity to address its treaty interests. Thlopthlocco Tribal Town, Alabama-Quassarte Tribal Town, and Kialegee Tribal Town should also receive notice and an opportunity to identify their respective rights and interests. I do not ask the Court to allocate ownership among these sovereign governments without their participation.

## IV. SECRETARIAL APPROVAL AND TRIBAL CONSULTATION

17. To the extent Article XIII continues to govern the property, the Secretary of the Interior's approval of disposition and direction of sale proceeds are material requirements that must be addressed.

18. Interior's exercise of that authority would implicate Tribal treaty rights and resources. Interior must address the applicable government-to-government Consultation requirements, including its policies and procedures under 512 DM 4 and 512 DM 5 and Executive Order 13175, before making the relevant Departmental decisions.

19. To my knowledge, meaningful Consultation addressing those decisions has not occurred. General bankruptcy notice or informal communications do not, standing alone, establish compliance with government-to-government Consultation requirements.

20. I request production of records establishing Interior's involvement, its position concerning the treaty's applicability, any Secretarial approval, and the Consultation undertaken. Such documentation should identify participating governments and officials, information provided, Tribal responses, and how those responses informed the decisions.

21. I request that any disposition dependent on Secretarial approval be deferred until the applicable treaty and agency requirements have been addressed.

## V. MUSEUM COLLECTIONS AND NAGPRA

22. Based on my knowledge of the museum collections, I have concerns that they include items potentially subject to the Native American Graves Protection and Repatriation Act, 25 U.S.C. §§ 3001–3013, and its implementing regulations.

23. I object to treating potentially covered items as unrestricted sale assets without determining their status and documenting compliance with applicable requirements.

24. I request production of applicable inventories and summaries, acquisition and provenance records, Consultation documentation, published notices, repatriation requests, and records supporting any proposed transfer.

25. To my knowledge, effective Consultation concerning the identification, return, or lawful disposition of potentially covered items has not been demonstrated. The appropriate

Tribal governments and other authorized consulting parties should have an opportunity to address these matters.[1]

26. Potentially covered items should be preserved and withheld from disposition pending determination of their status and lawful treatment. This objection does not assume that every Native artwork or museum object falls within NAGPRA.

## VI. RARE BOOKS, HISTORICAL DOCUMENTS, AND LIBRARY COLLECTIONS

27. I have not been provided with a complete itemized inventory of the rare books, historical documents, and special collections proposed for disposition.

28. Without adequate identification and supporting records, affected parties cannot meaningfully evaluate ownership, loan conditions, donor restrictions, historical significance, or the basis for valuation.

29. I request an itemized catalogue of significant materials and collections, together with provenance, ownership, applicable restrictions, and the valuation supporting the proposed transaction.

30. Records relevant to treaty rights, collection ownership, loans, and repatriation must be preserved rather than dispersed in a manner that impairs their evidentiary use.

## VII. CEMETERY AND CULTURAL RESOURCE PROTECTIONS

31. The campus contains a cemetery. Its boundaries, ownership, legal status, access rights, and applicable protections must be addressed expressly.

32. I object to any disposition that would permit unlawful disturbance of graves or associated cultural resources or impair protected access.

33. The applicability of the Archaeological Resources Protection Act, NAGPRA, and other burial and cultural resource protections should be evaluated based on authoritative land-status records and the activities proposed.

34. I request production of relevant title records, federal restrictions, cemetery records, recorded protections, and proposed sale provisions addressing the cemetery. Trust or restricted status should be determined from authoritative records rather than assumed either to exist or to have ended.

## VIII. THIRD-PARTY PROPERTY AND RESTRICTED CHARITABLE ASSETS

35. Bacone's possession of property does not establish unrestricted ownership. The review must identify artwork, artifacts, books, and documents held on loan, deposited for safekeeping, subject to return conditions, or held for another owner.

---

[1] Oklahoma museums feel impact of new NAGPRA rules - ICT

36. Applicable donor restrictions and limitations on nonprofit asset transfers must also be addressed. Under 11 U.S.C. § 363(d)(1), applicable nonbankruptcy restrictions on qualifying nonprofit transfers remain relevant.

37. I object to any purported transfer of third-party property or extinguishment of ownership and return interests without identification of those interests, appropriate notice, and a determination of the legal basis for the proposed treatment.

## IX. BOARD COMPOSITION AND CORPORATE AUTHORIZATION

38. Article II, Section 1 of the supplied Bacone bylaws requires seven to ten trustees, a majority American Indian membership, and one member from each Chartering Tribe. A copy of the supplied page is attached as Exhibit A.

39. Based on information available to me, I assert that Bacone lacked the required minimum of seven trustees when the Chapter 11 petition was filed, at the time of conversion to Chapter 7, and during subsequent relevant corporate actions.

40. I request an evidentiary determination of the Board's composition and authority at the relevant times, including production of:

a. The complete governing charter and bylaws, with amendments and effective dates;

b. Trustee rosters, appointment and election records, terms, resignations, removals, and extensions;

c. Records concerning Chartering Tribe representation and required membership qualifications;

d. Applicable quorum, vacancy, voting, and delegation provisions;

e. Meeting notices, attendance records, minutes, resolutions, and written consents authorizing the bankruptcy petition and any corporate request for conversion; and

f. Any subsequent ratification or other asserted cure.

41. The minimum board size and the quorum necessary for particular actions are distinct questions. I request findings under the complete governing documents and applicable law rather than an assumption that the petition and subsequent corporate actions were properly authorized.

42. I recognize that the Chapter 7 Trustee's statutory authority is distinct from the authority of Bacone's Board. I request determination of the legal consequences of any original authorization defects and identification of the authority supporting any conveyance requiring action by Bacone's officers or trustees.

## X. PRESERVATION AND EVIDENTIARY HEARING

43. Transfer or dispersal before resolution of these disputes could impair recovery of loaned property, identification of cultural items, review of treaty interests, and access to essential evidence.

44. I request secure preservation of disputed property and associated records, documentation of location and condition, and an accounting of any removal or transfer. Sensitive burial and cultural information should be protected from unnecessary public disclosure.

45. Timothy Tate Nevaquaya may provide testimony about matters within his personal knowledge concerning particular artworks and their history. He is not named as a joint objector in this filing.

## XI. NATIONAL HISTORIC PRESERVATION ACT AND SECTION 106 REVIEW

46. The Bacone College Historic District is listed in the National Register of Historic Places, reference number 14001027, with a listing date of December 10, 2014.

47. I object to proceeding with the proposed disposition without addressing the applicability of Section 106 of the National Historic Preservation Act, 54 U.S.C. § 306108, and its implementing regulations, 36 C.F.R. Part 800.

48. To the extent the disposition requires approval by the Secretary of the Interior under Article XIII of the Treaty with the Creeks of 1866 or other applicable authority, that approval presents a federal agency action requiring a determination of whether the transaction constitutes an undertaking with the potential to affect historic properties.

49. I request production of any Section 106 applicability determination, identification of the responsible federal agency, and documentation of review already undertaken. If the agency concludes that Section 106 does not apply, I request the factual and legal basis for that conclusion.

50. If Section 106 applies, the responsible agency must identify affected historic properties, assess potential effects, and complete the required Consultation and review before issuing the relevant approval. Consultation must include the appropriate State Historic Preservation Officer or Tribal Historic Preservation Officer, as applicable, and Indian Tribes that attach religious and cultural significance to affected historic properties, including properties outside Tribal lands.

51. The review should address reasonably foreseeable effects associated with the proposed transaction, including changes in use, subdivision, demolition, alterations, removal of contributing features, deterioration, and disturbance of archaeological or burial resources. The historic district's documented boundaries and contributing resources should be identified rather than assumed to encompass every campus parcel or collection item.

52. If the transaction would transfer historic property out of federal ownership or control, 36 C.F.R. § 800.5(a)(2)(vii) specifically identifies such a transfer without adequate and legally enforceable preservation restrictions as an example of an adverse effect. Whether the property is subject to such federal ownership or control must be determined from the relevant records.

53. I request identification and preservation of any existing historic preservation easements, covenants, grant conditions, or other enforceable restrictions affecting the property.

Where appropriate through the Section 106 process, preservation conditions should be considered to address adverse effects.

54. I request that the Court defer consummation of any disposition dependent upon federal approval until the responsible agency has documented its Section 106 determination and completed any required review. I further request that the proposed sale order expressly preserve applicable historic preservation restrictions and required federal approvals.

REQUEST FOR RELIEF

WHEREFORE, I respectfully request that the Court:

A. Set an evidentiary hearing on these objections;

B. Deny or defer the disputed portions of the proposed sale pending determination of ownership and applicable legal restrictions;

C. Preserve and exclude disputed Doc Tate Nevaquaya works pending determination of ownership and return rights, and expressly preserve copyrights owned by the estate;

D. Require production of the relevant title, corporate authorization, accession, loan, inventory, valuation, Consultation, and disposition records;

E. Determine the applicability and consequences of Article XIII's approval, proceeds, and reversion provisions;

F. Require documentation addressing applicable Interior approval and Consultation obligations before consummation of any transaction dependent upon them;

G. Preserve potentially NAGPRA-covered items pending determination of their status and lawful disposition;

H. Require express treatment of cemetery protections and applicable access and land restrictions;

I. Provide affected owners and Tribal governments an opportunity to present their interests;

J. Determine the legal effect of any established corporate authorization defects; and

K. Require documentation of the responsible federal agency's determination concerning Section 106 applicability and, if applicable, completion of the required historic preservation review and Consultation before the relevant federal approval and consummation of the transaction.

L. Grant such further relief as the Court finds appropriate.

Respectfully submitted,

Alicia Nevaquaya, individual objector
650 W 67th Street Tulsa, OK 74132 918-699-9850 farmadvocate@gmail.com

CERTIFICATE OF SERVICE
I hereby certify that on this 16th day of November, 2026, a true and correct copy of the foregoing
document was served via U.S. Mail (Certified Mail, Return Receipt Requested) and/or electronic transmission upon the primary parties of record:

CERTIFICATE OF SERVICE

:

Luke Homen, Chapter 7 Trustee
Luke Homen Law, PLLC
10313 Greenbrier Parkway
Oklahoma City, Oklahoma 73159

Office of the United States Trustee
401 South Boston Avenue, Suite 1200
Tulsa, OK 74103

Tim Gallegly, Attorney for MHEC, LLC
Crowe & Dunlevy
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102

Alicia Nevaquaya

650 W 67th Street

Tulsa, OK 74132

farmadvocate@gmail.com

918-699-9850

EXHIBIT A

Bacone College bylaws excerpt, page 2, containing Article I and Article II, Sections 1–4.

**ARTICLE I**
**LEGAL STATUS**

**<u>Section 1. Official Name of the College:</u>**
Official Name of the College shall be Bacone College.

**<u>Section 2. Board Title:</u>**
The governing body of Bacone College shall be known as the "Board of Trustees of the Bacone College" (herein sometimes referred to as the "Board of Trustees" or "Board").

**ARTICLE II**
**ORGANIZATION OF THE BOARD**

**<u>Section 1. Composition of the Board:</u>**
The Board of Trustees of Bacone College shall consist of not less than seven (7) nor more than ten (10) members, of which a majority are American Indians, with one member from each of the Chartering Tribes. In addition, one student may serve as a non-voting member.

**<u>Section 2. Authority of the Board:</u>**
The Board of Trustees possesses broad authority over the business and property of the College.

The Chartering Tribes charge the Board of Trustees with the responsibility of providing opportunities for higher learning for their tribally enrolled citizens and other persons who are qualified for admission, according to the standards prescribed by the Bacone College.

**<u>Section 3. Confirmations of Board Membership:</u>**
The Board of Trustees shall formally accept the membership of the Board of Trustees. The Chartering Tribes shall appoint Board members at their discretion and in accordance with their respectful tribal laws and processes.

**<u>Section 4. Membership of Board of Trustees - Election and Term</u>**
New members of the Board of Trustees shall be elected by a majority of the Board of Trustees then in office. In addition, Chartering Tribes will designate a representative to the Board from their respective tribe(s). New members may be elected at any of the regular scheduled meetings of the Board of Trustees.

Each Trustee shall serve a three-year term. Terms start effective with the end of the meeting in which election takes place and end after the meeting of the term for which elected. Trustees may serve no more than two consecutive terms.

An additional one-year term may be provided to a Trustee whose term limit has been reached to meet the mission or administrative needs of the institution provided that such extension will not prohibit the regular election of a new full-term Trustee. Such terms will require a 3/4 vote.

2

Exhibit B:

Affidavit of Knowledge by Dr. Leslie Hannah

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

**In Re: BACONE COLLEGE, Debtor.**
Case No. 24-80487
Chapter 7

## AFFIDAVIT OF FACT OF DR. LESLIE HANNAH

**STATE OF OKLAHOMA**
**COUNTY OF** CHEROKEE

I, Dr. Leslie Hannah, being of lawful age and first duly sworn upon oath, state as follows under penalty of perjury:

1. I am the President of Bacone College, located in Muskogee, Oklahoma. I possess personal knowledge of the institutional operations, historical records, and administrative governance of the institution, and I am competent to testify to the matters stated herein.
2. In my capacity as President, I am intimately familiar with the foundational history of the campus proper, which was originally established in 1885 as "Indian University" on a land base of approximately 160 acres in Muskogee County.
3. Institutional and historical records demonstrate that this real property was originally dedicated under an express sovereign tribal covenant and strict federal Indian trust protections for the exclusive, perpetual purpose of serving as an educational sanctuary for Native American people.
4. To the best of my knowledge and administrative review, the historic federal restrictions against alienation and the sovereign tribal trust protections governing the Bacone College campus have never been lawfully extinguished or altered by an Act of Congress.
5. Because the land base remains subject to these foundational federal and tribal restrictions, it is my understanding and position that the real property constitutes restricted Indian land under the historical oversight of the United States Department of the Interior.
6. Consequently, the cessation or temporary interruption of the college's active educational mission triggers historical reversionary protections and tribal jurisdictional oversight rather than standard commercial liquidation under Chapter 7 of the United States Bankruptcy Code.

**FURTHER AFFIANT SAYETH NOT.**

Dated this _____ day of July, 2026.

______________________________
Dr. Leslie Hannah, Affiant
President, Bacone College

**NOTARY ACKNOWLEDGMENT**

Subscribed and sworn to before me, a Notary Public in and for the State of Oklahoma, by Dr. Leslie Hannah, on this 13 day of July, 2026.

Notary Public
My Commission Expires: 2/15/2029
My Commission Number: 2100 2164